UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 9:13-cv-81088-KAM

PICTET OVERSEAS INC.,
*et. al.*,

        Plaintiffs

v.

HELVETIA TRUST and
AAA GROUP INTERNATIONAL TRUST,

        Defendants.
_____/

**DEFENDANTS' POST-HEARING MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR INJUNCTION**

        Defendants, Helvetia Trust and AAA Group International Trust (collectively, the "Claimants"), by undersigned counsel, pursuant to the Docket Entry 30 hereby file this additional brief in opposition to the motion (the "Motion") of Pictet Overseas Inc. ("Plaintiff" or "Pictet Overseas") and the Partners for a preliminary and permanent injunction [D.E. 3], and further state as follows:

1.     *Introduction*

        By Order entered November 27, 2013, the eight partners that act through their employees to operate the partnership known as Pictet & Cie were added as party plaintiffs (hereinafter the "Partners"). D.E. 34. As demonstrated herein, (1) the Partners must arbitrate the dispute raised in the FINRA arbitration filed by the Claimants, without regard to whether Pictet Overseas must arbitrate; and (2) Pictet Overseas must arbitrate as well because the Partners are associated persons and the dispute involves customers of the Partners and the business of the

Partners.

Under the Federal Arbitration Act, "any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration." *Moses H. Cohen Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).[1] Arbitration is to be compelled unless it can be determined with "'positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *First Montauk Securities Corp. v. Four Mile Ranch Dev. Co.*, 65 F.Supp.2d 1371, 1377 (S.D. Fla. 1999); *see, e.g., John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 59 (2d Cir. 2001) *quoting AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 64, 649 (1986) (if there is an ambiguity in the definition of the word "customer," it must be construed in favor of arbitration). In light of the strong federal policy favoring arbitration, the arbitration commenced by Claimants against the Plaintiff, the associated persons-Partners, and others should continue to proceed and Plaintiff and the associated persons-Partners are not be entitled to a preliminary or permanent injunction. *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1982) (the granting of a preliminary injunction is an extraordinary and drastic remedy that may only be granted upon the movant meeting his burden of persuasion on all four requisites).

---

[1] Plaintiff's contention that there is no agreement to arbitrate is plainly incorrect. The FINRA (formerly NASD) Code constitutes the agreement. *See, e.g., MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004); *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir 2004). As reflected *infra*, Plaintiff is a member of FINRA and the eight individual partners are associated persons of Plaintiff. Both members and associated persons are required to arbitrate disputes upon a customer's demand. Because the FINRA Code is a written agreement to arbitrate, the issue in dispute here goes to the scope of the agreement and therefore the presumption in favor of arbitration applies. *King*, 386 F.3d at 1367.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

   2.   *Plaintiff Cannot Demonstrate with Positive Assurance that the Arbitration Clause is Not Susceptible to an Interpretation that Requires Arbitration of this Dispute*

      A.   *Plaintiff is a FINRA member and the eight Partners are associated persons.*

Pursuant to the FINRA Rules, member firms are required to arbitrate disputes brought by a customer where (1)"[t]he dispute is between a customer and a member or associated person of a member;" and (2) "[t]he dispute arises in connection with the business activities of the member or the associated person...." FINRA Rule 12200; *see, e.g., MONY*, 390 F.3d at 1343-44 *citing King*, 386 F.3d at 1367. Plaintiff admits that it is a member of FINRA.[2] Plaintiff also admits that it is "owned and under common control of the eight individuals who are also the general partners of Pictet & Cie, a private Swiss bank for Geneva, Switzerland." D.E. 23-1 at pp.24-25. Because each of the eight Partners is "[a] sole proprietor, *partner, officer, director*, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, *or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA* under the By-Laws or the Rules of FINRA," each of the eight managing Partners is unambiguously an "associated person" of Plaintiff under the FINRA Rules. *See* FINRA Rule 12100 (a) and (r) (emphasis added).[3] *See also, e.g., Miller v. Flume,* 139 F.3d 1130, 1135 (7th Cir. 1998) (officers and directors are subject to arbitration as associated persons); *JHS Capital Holdings v. Deel*, 2010 WL 5296928 at * 3 (E.D. Mich. 2010) (finding that indirect owner was an associated person under the rule).

---

   [2] Under the FINRA rules, a "member" is defined as "any broker or dealer admitted to membership in FINRA." FINRA rule 12100(o).

   [3] Plaintiff has disclosed that each of the eight managing partners is an indirect owner of the Plaintiff and that each such "owner direct[s] the management or policies of the firm." D.E. 23-1 at pp. 9-12.

B.   *No requirement exists that Claimants have a direct relationship with Plaintiff or that the dispute arises in connection with the business of Plaintiff.*

Plaintiff's obligation to arbitrate is not dependent on the Claimants being direct customers of Plaintiff. *See, e.g., King*, 386 F.3d at 1369 *citing Vestax Secs. Corp. v. McWood*, 280 F.3d 1078, 1082 (6th Cir. 2002) (other citations omitted) ("rejecting the argument that the Code requires the defendant-investors be direct customers of the NASD member firm in order to compel arbitration against the member"). Rather, as a member of FINRA, Plaintiff has agreed to arbitrate any "dispute ... between a customer and a member *or* associated person of a member." FINRA Rule 12200 (emphasis added); *see, e.g., King*, 386 F.3d at 1367 ("the term 'customer' refers to either a member's or an associated person's customer, affording customers of an associated person a right to compel arbitration against a member"); *see also, e.g., John Hancock,* 254 F.3d at 60 (rejecting any contention that a customer was required to have a direct relationship with the member firm); *WMA Sec., Inc. v. Ruppert*, 80 F.Supp.2d 786, 789 (S.D. Ohio 1999) ("The facts that Defendant [] never had an account with Plaintiff and the [security] in which both Defendants invested were not approved products of Plaintiff are irrelevant"). The member will be required to arbitrate a dispute even when caused by an associated person's rogue activities. *Peyser v. Kirshbaum*, 2012 WL 6200739 at * 3 (S.D.N.Y. 2012). Further, "nothing in the Code or in case law...requires the dispute to have arisen in connection with the activities of the associated person acting as agent or representative of the member association." *Beer v. Nutt*, 2007 WL 13100 * 4 (S.D.N.Y. 2007). "[I]nformal business relationships, even tenuous connections among the customer, associated person, and NASD member are sufficient to compel arbitration." *Id*. (citation omitted).

Finally, a member is required to arbitrate a dispute between a customer and an associated person of the member regardless of whether the associated person was acting for or on

4

behalf of the member when he engaged in the transaction with the customer. *King*, 386 F.3d at 1369 *quoting Daugherty v. Washington Square Secs., Inc.*, 271 F.Supp.2d 681, 690 (W.D. Pa. 2003) ("'The majority of federal courts faced with interpreting NASD Rule 10301(a) concluded that NASD members must arbitrate disputes raised by customers of their associated persons'").

    C.    *The dispute arises out of the business activities of the eight associated persons-Partners.*

It is not necessary that the dispute arise out of the business activities of the member as long as the dispute arises out of the business activities of the associated member. *See, e.g.*, *Vestax Secs.*, 280 F.3d at 1083 ("arbitration of the dispute can be compelled even if the investors never became Vestax 'customers' and even if their claims did not arise in connection with the business of Vestex, as long as the investors were customers of associated persons Davis and Dunn and as long as the claims arose in connection with the activities of Davis and Dunn"); *WMA Sec., Inc.*, 80 F.Supp.2d at 789 ("The full clause requires that the claim arise *either* in connection with Plaintiff's business *or* in connection with the activities of persons associated with Plaintiff") (emphasis in original).  Moreover, a member's supervision of the activities of its associated persons in order to comply with applicable securities laws and the rules of FINRA arises in connection with the member's business.  *See, e.g., First Montauk*, 65 F.Supp.2d at 1379-80.

Pictet & Cie was established as a general partnership where the eight individual Partners are personally liable for the debts and other obligations of the partnership.  *See, e.g., Ross v. United States*, 122 B.R. 462, 464 (Bankr. M.D. Fla. 1990) ("It is basic that a partner is personally liable for all the debts of the partnership...."); *Kelly v. State of Florida*, 597 So.2d 900, 902 (Fla. 3d DCA 1992) ("It is equally well established that each general partner is personally liable for all partnership obligations").  In fact, the eight associated persons-Partners have

advertised that they are personally liable for all acts and omissions of Pictet & Cie. "Pictet & Cie is a partnership owned by eight managing Partners who stand personally and entirely liable for the Bank's commitments." D.E. 11 at Ex. A.  It has long been recognized that "[t]he level of participation in the affairs of the partnership by a partner or the existence of an agreement by the partners with respect to duties do not bind creditors of the partnership who can proceed against any partner for the full amount of the partnership's debts." *Ross*, 122 B.R. at 464.  It is beyond argument, therefore, that the business activities of Pictet & Cie are the business activities of the eight Partners.

The Claimants opened accounts at Pictet & Cie and deposited funds into those accounts.  Immediately thereafter, funds left the accounts and were used to purchase securities issued by Brian Calahan and those securities were then apparently deposited into the accounts.  Thus, it is also beyond dispute that the dispute raised in the FINRA arbitration involves securities transactions that were processed by the Partners through their employees.

In an analogous context, non-resident partners are amenable to personal jurisdiction in Florida without regard to whether they personally participated in any wrongdoing in Florida. *Kelly*, 597 So.2d at 901-902.  Any partner of a partnership is deemed to reasonably expect to be haled into court in Florida where a partnership conducts business in Florida on the basis that (i) a partnership acts through its agents; and (ii) each partner, whether or not involved in the Florida conduct, is personally liable for the obligations of partnership. *Id*.  The same precepts apply to the eight individual partners of Pictet & Cie, who are personally responsible for any and all acts or omissions of their employees and agents.  To be sure, Pictet & Cie is nothing more than a name utilized by the eight associated persons to conduct their business. *See Bd. of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1015 (9th Cir. 1987) ("They...are responsible for whatever legal consequences attach to their own

choice of business organization").

  D. *Claimants are customers of the associated persons.*

  The determination of whether the Claimants are customers of the associated persons is "'a legal question of contract interpretation for the Court.'" *MONY*, 390 F.3d 1344 *quoting King*, 386 F.3d at 1368. The Eleventh Circuit has held that the Court is "bound by the plain language of the Code, which defines 'customer' to include anyone who is not a broker or a dealer." *MONY*, 390 F.3d at 1344 *citing John Hancock*, 254 F.3d at 58 ("look[ing] no further than the plain language...."). "[N]othing in the Code directs or requires more." *King*, 386 F.3d at 1386. *See* FINRA Rules 13100 (i) defining a "customer" broadly only to exclude "a broker or dealer."

  Claimants have made demand for arbitration of claims against a member and the member's associated persons-Partners in connection with the business activities of the member's associated persons-Partners. Under a plain reading of the FINRA Rules, including but not limited to the broad definition of "customer" set forth in Rule 12100(i),[4] this dispute is arbitrable against Plaintiff and the associated persons-Partners. *See, e.g., MONY,* 390 F.3d at 1344-45 ("we are unconcerned with MONY's cornucopia of disputed facts [and] [i]nstead we focus on those facts required to satisfy King's two part test" and "...it is irrelevant that the Bornsteins invested with an unrelated company; what matters is that Keller was also an associated person with MONY"); *see also John Hancock*, 254 F.3d at 59.[5]

---

  [4] But even assuming a more narrow definition were to apply, Plaintiff cannot show with positive assurance that it would not apply to Claimants' dealings with the associated persons. It has been observed that the ordinary meaning of the word customer even "contemplates, for example, the person who spends time browsing in a department store, but decides not to buy." *Lehman Brothers, Inc. v. Certified Reporting Co.*, 939 F.Supp. 1333, 1340 (N.D. Ill. 1996)

  [5] Whether the broad rule makes sense as a matter of policy is not for the Court to decide. *See, e.g., Vestax*, 280 F.3d at 1083 (Nelson, J. concurring). "'We are without authority to

But even to the extent that the term "customer" were read less broadly so as not to upset the reasonable expectation of the FINRA member, *see, e.g., Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993) ( finding that customer status should not be read such that it "would do significant injustice to the reasonable expectations" of FINRA members), Plaintiff, here, readily should have anticipated being hailed into arbitration as a result of the business activities of its associated persons who own and control both Plaintiff and Pictet & Cie, where the business activities of both entities are essentially identical.  Plaintiff clearly knew and understood that the eight associated persons who control it are the sole partners of a Swiss private bank, Pictel & Cie, and that Pictet & Cie is engaged in securities dealings on behalf of its clients. Plaintiff also knew or should have understood that it had an obligation to supervise its associated persons.  *See, e.g., King*, 386 F.3d at 1370 ("the NASD requires that its members supervise the activities of their associated persons, as part of its business"). To avoid the conclusion that Claimants are not "customers" of the eight associated persons, Plaintiffs would need to show that the FINRA Code (the arbitration agreement) is not susceptible to an interpretation that covers Claimants' claims.  *See, e.g., O.N. Equity Sales Co. v. Stephens*, 2008 WL 835808 at *4, 7 (N.D. Fla. 2008).  This Plaintiffs cannot do. *See, e.g., John Hancock*, 254 F.3d at 59 ("Even if we were to accept John Hancock's interpretation...at best it would raise an ambiguity as to the definition of 'customer' [and ] [i]n the face of such ambiguity, we would be compelled to construe the provision in favor of arbitration"); *Bank of the Commonwealth v. Hudspeth*, 714 S.E.2d 566, 571-72 (Va. 2011) (definition of customer is "ambiguous and susceptible to a meaning which covers the parties and dispute in this case" and "because it is also

---

venture beyond our province, and must leave the very legitimate policy issues identified by the appellants to those charge with developing and approving NASD policy.'" *Id. quoting John Hancock*, 254 F.3d at 61 (Katzman, J. concurring).

susceptible to an interpretation under which the Bank may be considered a 'customer' merely because it is not 'a broker or dealer,' we must construe this clause in favor of arbitration").

To be a customer, it is only necessary to show "some nexus between the investor and the member or associated person in order for a party to take advantage of the NASD arbitration provision." *Malak v. Bear Stearns & Co., Inc*., 2004 WL 213014 (S.D.N.Y. 2004) (finding no nexus where the investor did not have an individual account with either the member or an entity related to the associated person). It does not matter whether the Partners personally interacted with the Claimants or did so through their employee agents. Thus, for example, in *John Hancock* the investor sought to hold the member firm responsible not only for the acts and omissions of its associated person but also for the acts and omission of the employee of the associated person. *John Hancock*, 254 F.3d at 50. The fact that the associate person engaged in activities though an agent or associate does not insulate the associated person or the member firm. *Id*. ("The absence of any case law directly supporting our holding is the result of the rarity with which this factual scenario is presented to the courts and does not imply support for [the firm's] position"). *Cf. Walnut St. Sec., Inc. v. Lisk*, 497 F.Supp.2d 714 (M.D. N.C. 2007). In *Lisk*, an associated person set up a separate corporation to sell certain unregistered securities which was headed by the associated person's daughter. The investors did not purchase the securities from the associated person but instead "purchased the securities from the daughter or persons hired by the corporation." *Id*. at 719. A number of the investors had never met the associated person and the sales were not made directly by the associated person. *Id*. While the issue was determined at arbitration, the court concluded that it too would have decided that the investors were customers of the associated person who used the corporation she established "as the vehicle for her scheme." *Id*. at 726.

Here, each of the associated persons is a partner of the private bank and is

9

"personally and entirely liable for the Bank's commitments." D.E. 11 at Ex. A. Here, the partners ran their business in the form of a general partnership and employed agents and employees to engage with their customers. The eight agree they are personally liable for all the acts and omission of the agents and employees of the partnership. Therefore, Claimants are customers of the eight associated persons-partners. Furthermore, evidence exists reflecting that the Claimants' accounts were subject to approval by the eight associated person-Partners and that the associated person-Partners did indeed approve Claimants' accounts at Pictet & Cie, which included management of the accounts by Brian Calahan. *See* D.E.35 at Ex. 6.[6]

3. *Conclusion.*

Plaintiff cannot show substantial likelihood on the merits, irreparable injury, injury that outweighs the injury to Claimants, and that the injunction would not be adverse to the public interest. *See, e.g., Pershing LLC v. Curi*, 2013 WL 785990 at *4 (S.D. Fla. 2013); *Kalb v. Quixar*, 2008 WL 879406 (M.D. Fla. 2008). Moreover, to the extent any ambiguities exist, such ambiguities must be resolved in favor of arbitration. Accordingly, Claimants respectfully request that Plaintiff's motion for an injunction be denied.

---

[6] *See, e.g., Developers Sur. and Indem. Co. v. Bi-Tech Const., Inc.*, 2013 WL 4563657 (S.D.Fla. 2013) *quoting Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir.1995) (courts may rely on "hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding").

*Attorneys for Defendants:*

CARLSON & LEWITTES, P.A.

By:　　　s/Curtis Carlson
　　　Curtis Carlson, Fla.Bar. No.236640
　　　1200 Suntrust International Center
　　　One Southeast Third Avenue
　　　Miami, Florida 33131
　　　Telephone: 305.372.9700
　　　Facsimile:  305.372.8265
　　　E-mail: carlson@carlson-law.net

**CERTIFICATE OF FILING**

　　　I HEREBY CERTIFY that on November 27, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record listed below, in the manner specified, either via transmitting of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Terry R. Weiss, Esq.
Greenberg Traurig LLP
3333 Piedmont Road NE
Suite 2500
Terminus 200
Atlanta, GA 30305
(678) 553-2603
weisstr@gtlaw.com

Mark Allan Salky, Esq.
Greenberg Traurig LLP
333 Avenue of the Americas
Suite 4400
Miami Florida  33131
(305) 579-0717
salkym@gtlaw.com

By:　　　s/Curtis Carlson