UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81088-CIV-MARRA/MATTHEWMAN

PICTET OVERSEAS, INC., *et al.*,

      Plaintiffs,

v.

HELVETIA TRUST and AAA
GROUP INTERNATIONAL TRUST,

      Defendants.

_____/



FILED by _____ D.C.

JAN 0 2 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION [DE 3]

THIS CAUSE is before the Court upon Plaintiffs, Philippe Bertherat, Remy Antoine Best, Renaud Fernand de Planta, Jacques Joseph de Saussure, Bertrand Francois Lambert Demole, Jean Francois Demole, Marc Philippe Pictet, Nicolas Lucien Pictet, and Pictet Overseas, Inc.'s (collectively, "Plaintiffs") Motion for Preliminary and Permanent Injunction ("Motion") [DE 3].[1] This matter was referred to the undersigned by United States District Judge Kenneth A. Marra.   *See* DE 4.   Defendants, Helvetia Trust and AAA Group International Trust ("Defendants"), filed a timely response [DE 11] and supplemental response [DE 23], Plaintiffs filed a timely reply [DE 26], and the matter is now ripe for review.   The Court held a hearing on the matter on November 18, 2013.   The parties then filed supplemental briefing.   [DEs 37-38].   For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT** the Motion [DE 3].

---

1 Although the individual Plaintiffs did not join the lawsuit until after the Motion was filed and after the hearing on the Motion, the parties have agreed that the "evidentiary hearing and all pleadings relating thereto can be deemed adopted by the [individual Plaintiffs]."   [DE 40].

1

## I.   BACKGROUND

On October 23, 2013, Plaintiff, Pictet Overseas Inc., filed a Complaint seeking declaratory judgment, injunctive relief, and award of costs.   [Compl., DE 1].   In the Complaint, Plaintiff Pictet Overseas explains that it is a Canadian-based Financial Industry Regulatory Authority ("FINRA") member.   *Id.* at ¶ 1.   Defendants instituted FINRA arbitration against Plaintiffs and are seeking $1.8 million in actual damages, treble damages, and $100 million in punitive damages.   *Id.* at ¶ 4. Plaintiff Pictet Overseas alleges that it has never had any agreement to arbitrate with Defendants, Defendants are not its customers, and it does not consent to arbitration, so Plaintiff is not required to submit to FINRA arbitration.   *Id.* at ¶¶ 12-14.   Plaintiff Pictet Overseas stresses that it and Pictet & Cie[2] are separate and distinct corporate entities and that Defendants actually opened a banking relationship with Pictet & Cie, a Swiss bank.   *Id.* at ¶¶ 15-17.

Plaintiffs later filed their First Amended Complaint for Declaratory Judgment and Injunctive Relief after this Court held its hearing on the Motion for Preliminary and Permanent Injunction.   *See* DE 36.   In the Amended Complaint, Plaintiff Pictet Overseas simply added the eight individual partners who own Pictet & Cie and indirectly own the subsidiary that owns Pictet Overseas, Inc., as additional plaintiffs (hereafter, "individual Plaintiffs").   *Id.*   Plaintiffs have also filed a Second Amended Complaint in which they added additional detail regarding the citizenship of each of the individual Plaintiffs and each of Defendants' trustees.   [DE 43].

## II.   MOTION, RESPONSES, AND REPLY

According to the Motion, Defendants are two St. Lucia trusts that entered into a

---

[2] Pictet & Cie is not a FINRA member, while Pictet Overseas is a FINRA member.

relationship with an investment manager, Horizon Global Advisors Ltd. and/or Horizon Global Advisors, LLC, through Horizon's principal, Brian Callahan.   [DE 3, p. 3].   Defendants made investments through Horizon that initially were held in a custodian bank in Switzerland, Pictet & Cie, "an indirect affiliate of Pictet Overseas." *Id.*   It later turned out that Callahan had operated a Ponzi scheme.   *Id.* at p. 3-4.   Plaintiffs argue that Defendants are not their customers and that they have no relationship whatsoever with Defendants.   *Id.* at p. 2. Plaintiffs assert that Defendants' Statement of Claim is "largely unintelligible" and that Plaintiff Pictet Overseas clearly did not mishandle Defendants' offshore accounts as Defendants opened custodial accounts with Pictet & Cie in Geneva, not with Plaintiff Pictet Overseas in Montreal. *Id.* at pp. 3-4.   Plaintiffs also explain that the materials and correspondence attached to the Statement of Claim pertain to Pictet & Cie, and not to Plaintiff Pictet Overseas.   *Id.* at p. 4. Next, Plaintiffs explain that they have proven all of the factors required for a motion for preliminary and permanent injunction and that their motion must be granted.   *Id.* at pp. 5-13.

In their initial *pro se* response, Defendants argue that the eight individuals who own and control Plaintiff Pictet Overseas, the individual Plaintiffs, are associated persons of Plaintiff Pictet Overseas.   [DE 11 at p. 6].   Defendants state that the individuals own and control the Pictet Group as a general partnership, making each individual partner personally liable for the organization's actions.   *Id.*   Defendants emphasize that the eight general partners also own Pictet & Cie and that FINRA has registered each of the individuals and has assigned each a Central Registration Depository number.   *Id.* at pp. 5-6.   Defendants explain that Plaintiff Pictet Overseas states publicly that it is the sole entity by which the Pictet Group provides investment services in the U.S.   *Id.* at pp. 6-7.   Therefore, Defendants claim that they reasonably relied on Plaintiff Pictet Overseas to intervene if Callahan attempted to engage in any

securities transactions using Defendants' funds.   *Id.* at p. 7.   They argue that Pictet & Cie, by its own admission, allowed Callahan to engage in large-scale securities transactions by wiring Defendants' funds to a U.S. bank.   *Id.*   Defendants assert that, based on the foregoing, the motion for preliminary and permanent injunction must be denied.   *Id.* at pp. 8-15.

   After Defendants obtained representation, a supplemental response was filed.   [DE 23]. In the supplemental response, Defendants emphasize that all eight individual Plaintiffs have been named parties in the FINRA arbitration.   *Id.* at p. 1.   Defendants explain that the eight individual Plaintiffs are associated persons of Plaintiff Pictet Overseas under the FINRA rules and that Plaintiff Pictet Overseas is a member of FINRA.   *Id.* at pp. 1-2, 4-5.   They argue that the dispute underlying the arbitration arose in connection with the business activities of the member's associated persons as the associated persons "'approved' the opening of the accounts, and then negligently vetted, recommended, and/or supervised Calahan [sic], failed to monitor the accounts, and provided negligent investment advice."   *Id.* at p. 5.   Defendants explain that Plaintiff Pictet Overseas should have reasonably expected "to have to arbitrate a dispute caused by one or more of its associated persons at a time when they were associated persons of Plaintiff."   *Id.*   Defendants also contend that "Plaintiff is an alter ego of the eight Partners and Pictet & Cie.   The merits of that dispute are for the arbitrator to decide."   *Id.*   They cite case law outside of the Eleventh Circuit that holds that allegations of alter ego liability actually go to the merits of the dispute and should be decided by the arbitrator.   *Id.* at pp. 5-6.

   Plaintiffs again argue in their reply that Defendants were not their customers, but were rather customers of Pictet & Cie, a non-FINRA member.   [DE 26].   Plaintiffs explain that Brian Callahan could not have been Plaintiff Pictet Overseas' agent since it never held him out in that capacity.   *Id.* at p. 1.   Plaintiffs emphasize that "there is no evidence—none

whatsoever—showing that Pictet Overseas took any action to make Defendants believe that Callahan was acting on Pictet Overseas' behalf." *Id.* at p. 3.   Plaintiffs also argue against Defendants' alter ego theory and contend that Defendants have provided no evidence to support the theory. *Id.* at pp. 4-7.   Plaintiffs state, "Defendants utterly fail to rebut the presumption of corporate separateness." *Id.* at p. 7.   Next, Plaintiffs assert that "[e]ven if the Partners qualified as 'associated persons' (Pictet Overseas disputes this assumption), this would not make Defendants' claim arbitrable because Defendants fail to establish that they ever were 'customers' of a FINRA member." *Id.* at p. 8.   Plaintiffs distinguish some of the cases relied on by Defendants on the basis that the claims in those cases involved a direct relationship between the investor and the brokerage firm's registered representative or associated person. *Id.*   They contend that none of the partners in this case ever had any relationship with Defendants. *Id.* at pp. 8-9.

### III.   EVIDENTIARY HEARING

The Court held an evidentiary hearing on November 18, 2013.   The parties stipulated that all of the documents and exhibits previously filed with the Court were admissible.   They also stipulated that the deposition transcript of Jerry Ostry and all related exhibits were admissible, but they asked that the Court review all objections made at the deposition before considering Jerry Ostry's testimony.

The parties also clarified somewhat their arguments, although they both asked for additional time to file supplemental briefs.   Plaintiff Pictet Overseas contended that Defendants were only customers of Pictet & Cie, a bank in Switzerland.   It argued that there was no direct contact between Defendants and the eight individual partners.   Therefore, Plaintiff Pictet Overseas claimed that Defendants were never in any way customers of the partners and are

trying improperly to pierce the corporate veil of Pictet & Cie.

Defendants asserted that Plaintiff Pictet Overseas is a FINRA member and that the individual Plaintiffs are very clearly associated persons of Plaintiff Pictet Overseas pursuant to both the NASD rules and FINRA's "Brokercheck" website.   Defendants explained that Pictet & Cie is a general partnership, which is a fictitious entity.   Defendants argued that they entered into an agreement for investment services with Pictet & Cie, and thus they really entered into an agreement with the eight individual Plaintiffs.   The individual Plaintiffs also approved opening the account.   Therefore, Defendants assert that they are customers of the partners, who are associated persons of Plaintiff Pictet Overseas.

## IV.   SUPPLEMENTAL BRIEFING

Plaintiffs, in their supplemental brief, argue that Defendants have "admitted that they purchased no goods or services from the Partners, or from the FINRA member Pictet Overseas." [DE 38 at p. 2].   Accordingly, Plaintiffs assert that Defendants have no relationship with Plaintiff Pictet Overseas and that Defendants "have recourse for their grievances in the forum they agreed to when they opened their accounts [with Pictet & Cie]: the courts of Geneva."   *Id.* Plaintiffs point out that Callahan's representations as a purported agent are insufficient to bind Plaintiffs.   *Id.*   They emphasize that they are seeking permanent injunctive relief based on the expedited schedule of the FINRA arbitration.   *Id.* at p. 3.   Plaintiffs stress that the essence of a customer relationship under the FINRA rules is the purchase of a commodity or service from a member, and such a purchase is absent in this case.   *Id.* at pp. 3-4.   They assert that Defendants, by their own admission, never had any customer relationship with Plaintiff or the eight individual Plaintiffs.   *Id.*   Plaintiffs explain that the "business activities" prong of FINRA Rule 12200 is not an independent basis for arbitration and that Defendants must first show that

6

they were customers of Plaintiff Pictet Overseas or its associated persons.   *Id.* at pp. 7-8.   They reiterate their position that Defendants' overly inclusive reading of the FINRA Rules would upset the reasonable expectations of FINRA members.   *Id.* at pp. 8-9.   Plaintiffs argue that the "alter ego" theory advanced by Defendants should be decided by this Court as it goes to the "customer" question and not the merits of the dispute.   *Id.* at p. 9.   Moreover, they assert that common ownership is not sufficient to pierce the corporate veil and that Defendants have not made a strong enough showing to be permitted to pierce it.   *Id.* at pp. 9-11.   Finally, Plaintiffs contend that a permanent injunction should be entered at this stage since the core material facts are not in dispute.   *Id.* at pp. 12-14.

In their supplemental brief, Defendants contend that the eight individual Plaintiffs are associated persons of Plaintiff Pictet Overseas under the FINRA rules.   [DE 37 at p. 3].   They argue that Plaintiff Pictet Overseas can be required to submit to FINRA arbitration even if Defendants are not direct customers of Plaintiff.   *Id.* at p. 4.   They also contend that there is no requirement that the dispute arise in connection with the business of Plaintiff Pictet Overseas; tenuous connections and informal business relationships between Defendants and Plaintiffs are sufficient to compel arbitration.   *Id.*   Defendants also explain that the dispute need not arise out of the business activities of the FINRA member, but rather can arise out of the business activities of the associated member.   *Id.* at p. 5.   They assert that the member's supervision of any associated person's activities in order to comply with securities laws and the FINRA Rules "arise in connection with the member's business."   *Id.*   Therefore, Defendants explain that, since Pictet & Cie is a general partnership, and the eight individual Plaintiffs are personally liable for all debts, obligations, acts, omissions, and commitments of Pictet & Cie, "the business activities of Pictet & Cie are the business activities of the eight Partners."   *Id.* at pp. 5-6.

Defendants point out that they opened accounts at Pictet & Cie and deposited funds there, and the funds were used to purchase securities issued by Callahan. [DE 37 at p. 6].   Based on this factual scenario, Defendants argue that the dispute "involves securities transactions that were processed by the Partners through their employees." *Id.*   Defendants assert that a "customer" is simply anyone other than a broker or dealer and that Defendants are therefore customers of Plaintiffs. *Id.* at p. 7.   They argue that Plaintiffs should have had a reasonable expectation of being brought into arbitration "as a result of the business activities of its associated persons who own and control both Plaintiff [Pictet Overseas] and Pictet & Cie, where the business activities of both entities are essentially identical." *Id.* at p. 8.   The reasonable expectation, it is argued, stems from the fact that the eight people who control Plaintiff Pictet Overseas are also the sole partners of Pictet & Cie, and Pictet & Cie engaged in securities dealings on behalf of its clients, such as Defendants. *Id.*   Defendants state that "Plaintiff [Pictet Overseas] also knew or should have known that it had an obligation to supervise its associated persons." *Id.*   Finally, Defendants argue that "evidence exists reflecting that the Claimants' accounts were subject to approval by the eight associated person-Partners and that the associated person-Partners did indeed approve Claimants' accounts at Pictet & Cie, which included management of accounts by Brian Calahan [sic]." *Id.* at p. 10.

## V.   DOCUMENTARY EVIDENCE

According to the Declaration of Déodat Lê [DE 3-1], who is the Chief Compliance Officer at Pictet Overseas, Inc., Plaintiff Pictet Overseas is an SEC registered broker-dealer and FINRA member headquartered in Montreal, Quebec. *Id.* at ¶ 2.   Pictet Overseas, Inc., is a wholly owned subsidiary of Sopafin (Luxembourg) S.A., which is indirectly owned by the same eight individuals who own and manage as general partners Pictet & Cie. *Id.* at ¶ 3.   Pictet &

8

Cie is a Swiss bank located in Geneva, Switzerland. *Id.* Mr. Lê searched Plaintiff Pictet Overseas' databases and determined that neither Defendants nor Defendants' trustees had ever had a customer account with Plaintiff Pictet Overseas. *Id.* at ¶¶ 6-7. He also states that none of the documents attached to Defendants' Amended Statement of Claim relate to Plaintiff Pictet Overseas. *Id.* at ¶ 8. Mr. Lê emphasizes that Plaintiff Pictet Overseas and Pictet & Cie are separate and distinct entities. *Id.* at ¶ 11. Finally, he attests that Plaintiff Pictet Overseas does not have an agreement to arbitrate with either Defendant and that neither Defendant has "ever been a customer of, or had an account with, Pictet Overseas Inc., and for avoidance of any doubt, Pictet Overseas Inc. does not consent to arbitrate Defendants' claims." *Id.* at ¶¶ 15-16.

Defendants rely on several documents to support their claim, but Defendants' counsel focused on a few particular documents during the evidentiary hearing. The first document is the Application to Open a Banking Relationship for a Trust and supporting forms for AAA Group International Trust. [DE 3-5]. At the evidentiary hearing, Defendants' counsel pointed out Jerry Ostry testified during his deposition that several pages of the application were blank when he signed them and that he did not known who Horizon Global Advisors was when he signed the documents. Therefore, Defendants' counsel asserted that Pictet & Cie should be held liable pursuant to the written agreement between Defendants and Pictet & Cie since the bank engaged the services of a third party, and Jerry Ostry did not appoint any specific third party to be asset manager. Defendants' counsel also argued that the agreement states that the manager shall not be authorized to withdraw any funds or assets from the account under any circumstances, yet that is what occurred in this case. He contended that Brian Callahan was an agent of Pictet & Cie because he provided forms to Defendants, did the verifications, and opened Defendants' accounts.

9

Defendants also rely on the fact that Brokercheck, which can be found online at the finra.org website, lists the eight individual Plaintiffs as the persons who control Plaintiff Pictet Overseas.   *See* DE 35-1.   Each individual has his own Central Registration Depository number from FINRA.   *Id.*   Defendants also explained at the evidentiary hearing that an email chain from a Pictet employee to Brian Callahan states that one of Defendants' accounts would be introduced to the eight individual Plaintiffs.   [DE 35-6].   Defendants contend that this email shows that the eight Plaintiffs directly approved opening the account and approved Brian Callahan being the money manager for this account.

## VI.   DISCUSSION

A preliminary injunction may be issued pursuant to Federal Rule of Civil Procedure 65 if the movant demonstrates that

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).   While the decision to grant or deny a preliminary injunction is within the discretion of the district court, a preliminary injunction is considered to be an "extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites."   *Id.* (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)).   "In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction."   *Levi Strauss & Co. v. Sunrise Intern'l Trading Inc.*, 51 F.3d 982, 985

(11th Cir. 1995).

> FINRA Rule 12100(a) and (r) states that an "associated person" includes

> [a] sole proprietor, **partner**, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA."

FINRA Rule 12200 provides in relevant part that arbitration is required when "[r]equested by the customer," and "[t]he dispute is between a customer and a member or associated person of a member" and "arises in connection with the business activities of the member or the associated person."   "Hence, an investor can compel a FINRA member to arbitrate a claim, even when no written arbitration agreement exists, provided that the investor demonstrates that the dispute (1) is between either a customer and a member or a customer and a member's associated person, and (2) arises in connection with the business activities of the member or its associated person." *Morgan Keegan & Co. v. Shadburn,* 829 F.Supp.2d 1141, 1147 (M.D. Ala. 2011). Defendants argue that they are customers of associated persons of Plaintiff Pictet Overseas.   In order to make this claim, they argue that (1) the eight partners are associated persons of Plaintiff Pictet Overseas pursuant to the FINRA Rules, (2) the eight partners owned and controlled Pictet & Cie and were alter egos of Pictet & Cie, (2) Defendants were customers of Pictet & Cie, (3) by virtue of being customers of Pictet & Cie, they were customers of the eight individuals, so, ergo, (4) Defendants were customers of associated persons of Plaintiff Pictet Overseas.

## LEGAL ANALYSIS

### A.   DEFENDANTS WERE NOT CUSTOMERS OF THE EIGHT PARTNERS

Defendants do not argue that they were ever customers of Plaintiff Pictet Overseas.

Rather, they argue that the customer relationship existed between Defendants and the eight individual Plaintiffs, because the individual partners were the owners of Pictet & Cie and were simultaneously associated persons of Pictet Overseas.   At the evidentiary hearing, Defendants' counsel explicitly stated that Defendants had no direct contact with the partners.   *See* Transcript of Ev. Hrg, 40: 17-19.   Defendants' counsel explained that the only direct contact between Defendants and the partners was that the partners approved the opening of Defendants' accounts at Pictet & Cie.

The NASD expressly defines "customer" as anyone who is not a broker or dealer.   *See* Rule 0120(g).   The issue here is whether Defendants were customers of Plaintiff Pictet Overseas or of associated persons of Plaintiff.   Defendants cite several cases, *Multi-Financial Secs. Corp. v. King*, 386 F.3d 1364 (11th Cir. 2004), *Vestax Secs. Corp. v. McWood*, 280 F.3d 1078 (6th Cir. 2002), *Peyser v. Kirschbaum*, No. 12 CIV. 2857(KBF), 2012 WL 6200739 (S.D. N.Y. Dec. 11, 2012), *Beer v. Nutt*, No. 06 CIV. 9424 HB, 2007 WL 13100 (S.D. N.Y. Jan. 3, 2007), and *MONY Secs. Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004), for the premise that they need not be direct customers of Plaintiff Pictet Overseas or its associated persons in order to force Plaintiff to arbitrate Defendants' claim.   Each of these cases is distinguishable, however. In *King*, the "associated person" was a registered representative of the NASD member, and he sold the customers unregistered securities and gave the customers investment advice.   *King*, 386 F. 3d at 1365.   Similarly, in the *MONY* case, the "associated person" at issue was clearly affiliated with the NASD member, and he actually visited the customers' house to discuss investments with them.   *MONY*, 390 F. 2d 1341.   In the instant case, however, the fraudster Brian Callahan was not a registered representative of Plaintiff Pictet Overseas or its associated persons. Nor did Callahan have any relationship, agency or otherwise, with Pictet Overseas or its

associated persons. In light of such facts, the cases cited by Defendants are inapposite.

In *Peyser*, the petitioner was introduced to a fraudulent investment by one of the respondent's registered brokers while he was a registered broker of that respondent and was being monitored by respondent.   2012 WL 6200739, at *1.   In *Beer*, the parties actually agreed that the defendant was a customer of both the corporate and individual plaintiffs, so whether defendant was a "customer" was not at issue.   2007 WL 13100, at *2.   Finally, the *Vestax Secs. Corp.* case is distinguishable in that it involved the negligent and fraudulent conduct of two Vestax dealers.   280 F. 3d 1078.

Defendants here are not customers of the individual Plaintiffs and had no relationship with them whatsoever.   Nor did Defendants have any customer relationship with Pictet Overseas. Defendants first allege that that "the dispute raised in the FINRA arbitration involves securities transactions that were processed by the Partners through their employee" [DE 37 at p. 6].   This allegation is not only insufficient, but is also unsupported by the evidence in that Defendants simply rely upon a vague email.   Rather, the evidence shows that Defendants opened a bank account with a Swiss Bank, Pictet & Cie, and, thereafter, Brian Callahan, who was not an employee or agent of Pictet & Cie, operated a Ponzi scheme and defrauded Defendants out of their monies.

Defendants next allege that Plaintiffs negligently vetted, recommended, or supervised Callahan.   Once again, as explained below, Brian Callahan was not an employee or agent of Pictet & Cie, and Defendants argument has no merit.   Defendants also contend that Plaintiffs provided negligent investment advice and failed to supervise their accounts in compliance with securities laws and the FINRA rules.   Plaintiff Pictet Overseas clearly had no responsibility to Defendants to complete any of these tasks as it is an entity separate from Pictet & Cie.

Defendants cannot show that the individual plaintiffs were actually responsible for monitoring Defendants' accounts and providing investment advice to Defendants. As explained below, Defendants cannot pierce the corporate veil and establish that the individual Plaintiffs had such duties to Defendants. In conclusion, the Defendants placed no investments with Pictet Overseas, a Canadian brokerage company, or with any of its associated persons. The cases cited by Defendants are distinguishable as they involve obvious agents of NASD members clearly and directly engaging in wrongdoing that harmed individuals who were later deemed to be customers of the NASD members. Moreover, Defendants' claim that the business activities of Pictet & Cie are the business activities of the eight partners just because the partners stand personally liable for Pictet & Cie is fallacious, and Defendants cannot demonstrate that Brian Callahan was an agent of Plaintiffs and that they should be held liable for his actions.

Plaintiffs' argument regarding the "customer" issue is more credible. Just because the FINRA Rules limit the term "customer" to exclude brokers or dealers does not mean that the term "customer" includes any and all non-brokers and non-dealers. Such a conclusion could lead to an absurd result. The FINRA Rules give additional context to the term "customer." As explained by the Fourth Circuit in a recent case, under the FINRA Rules, "arbitrable disputes must arise in connection with the 'business activities' of the FINRA member, thus suggesting that for a person to obtain arbitration, the person must be a customer with respect to the FINRA member's business activities. *See* FINRA Rule 12200." *UBS Fin. Servs. Inc. v. Carilion Clinic*, 706 F.3d 319, 325 (4th Cir. 2013). According to the Fourth Circuit, the FINRA Rules also suggest that the business activities must involve investment banking or securities business pursuant to Rule 12100(r). *Id.* Thus, the Fourth Circuit has concluded that the term "customer" in Rule 12200 refers to "one, not a broker or dealer, who purchases commodities or

14

services from a FINRA member in the course of the member's business activities insofar as those activities are covered by FINRA's regulation, namely the activities of investment banking and the securities business." *Id.*    This Court agrees with the Fourth Circuit's analysis and believes that such a definition of "customer" comports with the intent behind the FINRA Rules. Under this interpretation of the term, Defendants would not be "customers" of any the individual Plaintiffs, who are alleged to be associated persons of Plaintiff.   Defendants did not purchase commodities or services from the individual Plaintiffs' during the course of their business activities with Pictet Overseas.   Rather, Defendants dealt directly with Pictet & Cie, a Swiss bank.

FINRA Rule 12200 states that parties are required to arbitrate under the Code if (1) arbitration is either required by a written agreement or requested by the customer, (2) the dispute is between a customer and member or customer and associated person of the member, and (3) "[t]he dispute arises in connection with the business activities of the member or the associated person . . . ."   In other words, Defendants are required to show both that they are a customer of Plaintiff Pictet Overseas or of the eight individual Plaintiffs AND that the dispute arose in connection with business activities of Plaintiff Pictet Overseas or of the individual Plaintiffs. The Court agrees with Plaintiffs' statement that "because Defendants cannot first prove that they were customers of Pictet Overseas or the Partners by purchasing a commodity or service from a FINRA member, the Court need not even reach the question whether the dispute arose in connection with their business activities."   [DE 38 at p. 8].

1.   <u>Plaintiff would not have had a reasonable expectation that it would face FINRA arbitration</u>

The court in *Wheat, First Sec., Inc., v. Green*, 993 F.2d 814 (11th Cir. 1993), analyzed the question of whether an arbitration agreement existed in a situation where a NASD member

could not have contemplated being required to arbitrate a particularly attenuated claim.   The court found that the term "customer" should not be read so broadly as to upset the reasonable expectation of the FINRA member.   *Id.* at 820.   Defendants claim that "Plaintiff [Pictet Overseas], here, readily should have anticipated being hailed into arbitration as a result of the business activities of its associated persons who own and control both Plaintiff and Pictet & Cie, where the business activities of both entities are essentially identical."   [DE 37 at p. 8].   The Court disagrees with Defendants.   The two entities are nowhere near identical as one is a Canadian broker and one is a Swiss bank.   In fact, the Court finds that this is a situation in which it would do great injustice to the reasonable expectations of Plaintiff Pictet Overseas if Defendants were found to be indirect customers of Plaintiff Pictet Overseas, thereby requiring Plaintiff to arbitrate Defendants claims.   Plaintiff Pictet Overseas could not have reasonably anticipated being forced into a FINRA arbitration just because Defendants had a banking relationship with Pictet & Cie.

      2.   <u>Brian Callahan has not been shown to be an agent of any of the Plaintiffs</u>

In contending that they were customers of Plaintiff Pictet Overseas' associated persons, Defendants also make an implicit argument that Brian Callahan was an agent of Plaintiff Pictet Overseas.   The only evidence that Defendants have to support their position that Mr. Callahan was an agent of Plaintiff Pictet Overseas, or even Pictet & Cie, however, is that Mr. Callahan told Jerry Ostry that he was an "agent of Pictet."   *See* Ostry Depo., DE 26-1, 15: 2-3.   An agency relationship requires: "(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent."   *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (citing *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F.Supp.2d 1346, 1354 (S.D. Fla. 2000)).

16

Clearly, Defendants have not sufficiently demonstrated that there was an agency relationship between Brian Callahan and any of the Plaintiffs.

### 3.   Defendants' alter ego theory is without merit

Defendants claim that this Court cannot even reach the issue of whether the Plaintiff Pictet Overseas is an alter ego of the individual Plaintiffs.   They cite *NDX Advisors, Inc. v. Advisory Financial Consultants, Inc.*, No. C 11-3234 SBA, 2012 WL 6520689, at *3 (N.D. Cal. Dec. 13, 2012), to support their position.   Plaintiffs argue that the *NDX Advisors* case is distinguishable because, in that case, the alter ego issue related to the merits of the underlying dispute.   Here, Plaintiffs contend, the alter ego issue pertains to the "threshold question of arbitrability" [DE 38 at 9] and is therefore to be decided by the Court.   The Court agrees with Plaintiffs' argument.   "A district court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the agreement encompasses the dispute at issue." *NDX Advisors, Inc.*, 2012 WL 6520689, at *2.   Since the issue of piercing the corporate veil in this case relates to whether a valid agreement to arbitrate exists between Defendants and Plaintiff, this Court may properly decide the issue.

Defendants' alter ego argument is also substantively without merit.   The Eleventh Circuit requires that a party must prove the following in order to "pierce the corporate veil":

> (1) the [individual Plaintiffs] dominated and controlled the [business entity] to such an extent that the [business entity's] independent existence, was in fact non-existent and the [individual Plaintiffs] were in fact alter egos of the [business entity]; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Lobegeiger v. Celebrity Cruises, Inc.*, 869 F.Supp.2d 1350, 1354 (S.D. Fla 2012) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011)).   Defendants have

not provided sufficient evidence to pierce the corporate veil in this case.  *See Variable Annuity Life Ins. Co. (VALIC) v. Dull*, No. 09-801139-CIV, 2009 WL 3064750, at *4 (S.D. Fla. Sept. 22, 2009) ("A lone allegation of mere affiliation, however, does not suggest, let alone prove, that VALIC controls VFA or that they are essentially one entity."); *Lobegeiger*, 869 F.Supp.2d at 1354 ("[D]ominion and control are not sufficient, and [ ] improper conduct and resulting injury must also be shown" in order to pierce the corporate veil.);  *Marsar v. Smith and Nephew, Inc.*, No. 8: 13-CV-1244-T-27TGW, 2013 WL 4413722, at *2 (M.D. Fla. Aug. 14, 2013) ("Plaintiff must still satisfy her initial burden of pleading facts supporting the alter ego theory.   And when the individual defendants file affidavits contesting the alter ego theory . . . the burden shifts back to Plaintiff.").

B.   PLAINTIFFS HAVE SATISFIED THE REQUIREMENTS FOR PRELIMINARY INJUNCTION

As stated above, Plaintiffs have demonstrated that they have a substantial likelihood of success on the merits as they have shown that Defendants' claim is not arbitrable against Plaintiffs as Defendants were never customers of Plaintiff Pictet Overseas or of its associated persons.   Next, Plaintiffs have demonstrated irreparable injury will be suffered unless the injunction issues.  *See Dean Witter Reynolds Inc. v. Pollack*, No. 96–6397–CIV, 1996 WL 1044969, at *3 (S.D. Fla. May 29, 1996) ("Where a party has a right to a judicial determination of arbitrability, it would be irreparable for arbitration to proceed on issues which are not subject to arbitration."); *Shadburn*, 829 F.Supp.2d at 1153 ("Courts have concluded that a movant suffers irreparable harm when it is 'forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'") (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)).   Plaintiffs have

demonstrated that the threatened injury to Plaintiffs outweighs whatever damage the proposed injunction may cause Defendants. *See Pollack*, 1996 WL 1044969, at *4 (finding that "permitting arbitration to proceed on issues which are most likely not subject to arbitration would cause greater injury to the plaintiff than a preliminary injunction which temporarily enjoins arbitration on these *particular* claims until final resolution of this action"); *Shadburn*, 829 F.Supp.2d at 1153 (finding that the balance of harms weighed in favor of entering a preliminary injunction "in light of Morgan Keegan's showing of a substantial likelihood of success that it cannot be forced to arbitrate the underlying dispute and the irreparable injury that flows from forced arbitration."). Finally, Plaintiffs have shown that the injunction would not be adverse to the public interest. *See Pollack*, 1996 WL 1044969, at *4 (explaining that "granting this action does not disserve the public interest because the public has no interest in compelling arbitration of claims which are not subject to arbitration"); *Shadburn*, 829 F.Supp.2d at 1153 ("Given the demonstration of a likelihood of success on the merits, the court finds that a preliminary injunction will serve the public interest by avoiding the time and expense that will result from a needless arbitration.").

It appears that Defendants were defrauded by Brian Callahan. In an effort to recoup their lost funds, they are seeking to arbitrate claims against Plaintiffs, who are the proverbial "deep pockets." Although the Court is sympathetic to Defendants' loss of funds by the fraudster Brian Callahan, that simply does not equate to a finding that a Canadian FINRA member (Pictet Overseas) and its indirect owners, who also happen to be partners of a Swiss non-FINRA member bank (Pictet & Cie), must be compelled to arbitrate Defendants' claims in a FINRA arbitration. Defendants are certainly free to bring suit against Pictet & Cie in

Switzerland, but have apparently decided for strategic reasons not to do so as of this date.[3] Based on the foregoing, the Court finds that the preliminary injunction requested by Plaintiffs should be granted.

C.   A PERMANENT INJUNCTION IS APPROPRIATE AT THIS JUNCTURE

Defendants did not tackle the issue of whether a permanent injunction should be entered at this time in their supplemental brief.   However at the evidentiary hearing, after initially agreeing that "the preliminary and permanent injunction can be both decided as a result of this hearing", Defendants' counsel changed course and stated "I better not agree to that.   We may want to have discovery on some of these issues."   Ev. Hrg. Transcript, 31:16-24. Additionally, in the parties' joint stipulation [DE 40], Defendants asserted that "discovery is necessary prior to the Court's ruling on the motion for permanent injunction."   Plaintiffs, on the other hand, argued that "discovery would not change the material facts that support entry of a permanent injunction at this stage."   *Id.*

The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, except that, for a permanent injunction, the movant must establish actual success on the merits instead of likelihood of success on the merits.   *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006) (citing *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 546 n. 12 (1987)).   If the moving party cannot show actual success on the merits because the case is still in its infancy, a request for permanent injunction is premature.   *Gen. Parts, Inc. v. Scotz*, Civil Action No. 2:07-cv-740-MHT, 2007 WL 4287804, at *4 (M.D. Ala. Nov. 30, 2007).   On the other hand, an evidentiary hearing on a permanent injunction may be

---

3 Plaintiffs argue that Defendants committed to bringing suit in Switzerland by virtue of signing a written agreement with Pictet & Cie that included a binding forum selection clause.   *See* DE 38 at pp. 11-12. Additionally, Plaintiffs' counsel stated at the evidentiary hearing that Defendants have interviewed Swiss attorneys in the past in anticipation of filing suit against Pictet & Cie in Switzerland.

unnecessary if "no triable issues of fact are involved." *U.S. v. Sanders*, Civil Action No. 1:05-CV-2458-JEC, 2007 WL 2493920, at *4 (N.D. Ga. Aug. 29, 2007) (quoting *U.S. v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983). "Additionally, it is appropriate to issue a permanent injunction without an evidentiary hearing if there is no allegation that evidence exists that could result in a different conclusion after a hearing." *Id.* The Court has reviewed the plethora of cases cited by Plaintiffs, albeit cases from outside of the Southern District of Florida, and agrees that additional discovery and/or a second evidentiary hearing would not change the fact that Defendants were never customers of Plaintiff Pictet Overseas, the FINRA member, or the individual Plaintiffs, who are associated persons of Plaintiff Pictet Overseas. In other words, Plaintiffs have already established actual success on the merits, not just a likelihood of success on the merits. Moreover, Defendants have not proffered any anticipated discovery that could conceivably alter the result in this case. Merely making a vague reference to the fact that Defendants may wish to avail themselves of further discovery is insufficient. The Court cannot envision any future discovery which would change the inevitable result in this case. Additionally, Defendants have not presented any argument whatsoever or any case law to support their position that a permanent injunction is premature. Therefore, the entry of a permanent injunction is appropriate at this time.

## VII.   CONCLUSION

In light of the foregoing, this Court **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion for Preliminary and Permanent Injunction ("Motion") [DE 3].

## VIII.   NOTICE OF RIGHT TO OBJECT

A party shall file written objections, if any, to this Report and Recommendation with United States District Judge Kenneth A. Marra within fourteen (14) days of being served with a

copy of this Report and Recommendation.   *See* 28 U.S.C. § 636(b)(1)(C).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 2ⁿᵈ day of January, 2014.

WILLIAM MATTHEWMAN
United States Magistrate Judge