IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81088-CIV-MARRA/MATTHEWMAN

|  |  |
|---|---|
| PICTET OVERSEAS INC., PHILIPPE BERTHERAT, REMY ANTOINE BEST, RENAUD FERNAND DE PLANTA, JACQUES JOSEPH DE SAUSSURE, BERTRAND FRANCOIS LAMBERT DEMOLE, JEAN-FRANCOIS DEMOLE, MARC PHILIPPE PICTET, and NICOLAS LUCIEN PICTET,<br><br>Plaintiffs,<br><br>v.<br><br>HELVETIA TRUST and AAA GROUP INTERNATIONAL TRUST,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS
TO REPORT AND RECOMMENDATION**

Plaintiffs, Pictet Overseas Inc. ("Pictet Overseas") and Philippe Bertherat, Remy Antoine Best, Renaud Fernand De Planta, Jacques Joseph De Saussure, Bertrand Francois Lambert Demole, Jean-Francois Demole, Marc Philippe Pictet, and Nicolas Lucien Pictet (collectively, the "Partners"), respectfully submit this Response to Defendants' Objections to Report and Recommendation. [D.E. 45.] The Magistrate's recommendations were correct in all respects, and the Report and Recommendation (the "Report") should be adopted in full.

I.    **INTRODUCTION.**

After setting out the parties' positions in detail, Magistrate Judge Matthewman rightly concludes that Defendants have not met their burden of demonstrating that they were customers

of the Partners.[1]  The Magistrate applies the virtually universal principle that a transactional relationship involving the purchase of a commodity or service from a FINRA member or associated person is necessary to meet the definition of "customer."  This principle, most recently articulated by the Fourth Circuit, is fully consistent with Eleventh Circuit precedent.  In their Objections to the Report, as they did below, Defendants attempt to stitch together snippets of cases to urge a new, radical definition of the term "customer" – but the relevant authorities simply do not support their tortured effort.  Magistrate Judge Matthewman carefully considered Defendants' audacious position and rejected it in his detailed Report.

Plaintiffs address below only certain of Defendants' arguments and rely on their previous briefing and the Magistrate's reasoned conclusions on the remaining points raised by Defendants.  Defendants identify no errors of law or fact in the Report, and this Court should adopt the Report in full.

## II.    THE REPORT IS CORRECT IN ALL RESPECTS.

Defendants argue that Magistrate Judge Matthewman erred by (1) ignoring Eleventh Circuit precedent, specifically *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364 (11th Cir. 2004), and (2) misapplying the Fourth Circuit's decision in *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013) to reach the conclusion that Defendants were not customers of the Partners.  Defendants are incorrect on both counts.

Contrary to Defendants' claim, Magistrate Judge Matthewman did not ignore *King,* he simply noted that Defendants' reliance on *King* (and several other cases) in Defendants' Post-Hearing Memorandum in Opposition to Plaintiffs' Motion for Injunction [D.E. 37] is misplaced.  *See* Report at 12 (criticizing Defendants' discussion of not only *King*, but also *Vestax Secs. Corp.*

---

[1] Defendants previously conceded that they are not customers of Plaintiff Pictet Overseas.

*v. McWood*, 280 F.3d 1078 (6th Cir. 2002), *Peyser v. Kirschbaum*, No. 12 CIV. 2857(KBF), 2012 WL 6200739 (S.D.N.Y. Dec. 11, 2012), *Beer v. Nutt*, No. 06 CIV. 9424 HB, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007), and *MONY Secs. Corp. v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004)).

In *King*, it was undisputed that the investor (King) was a customer of the FINRA member's associated person, Anthony Micciche ("Micciche"). *See* 386 F.3d at 1368. It was also undisputed that Micciche provided investment advice to King and that King relied on his advice. *Id.* at 1365. The disputed issue was whether the FINRA member could be compelled to arbitrate on the basis of the relationship between King and Micciche, its registered representative. Defendants suggest that Magistrate Judge Matthewman ignores *King* by improperly concluding that Defendants must have purchased a commodity or service from a FINRA member in order to qualify as the FINRA member's customer, but Defendants oversimplify his analysis. Magistrate Judge Matthewman actually observed that Defendants' reliance on *King* is misplaced because the individual who played the role most akin to Micciche (here, Brian Callahan) was not an associated person or registered representative of a FINRA member. *See* Report at 12-13 ("In the instant case, however, the fraudster Brian Callahan was not a registered representative of Plaintiff Pictet Overseas or its associated persons. Nor did Callahan have any relationship, agency or otherwise, with Pictet Overseas or its associated persons.").

Defendants attempt to overcome this insurmountable hurdle by suggesting that the Partners are the "associated persons" of the FINRA member and that Defendants' purported relationship with the Partners entitles them to FINRA arbitration. There are many problems with this argument, but perhaps the most prominent of which is that the Defendants "had no relationship with [the Partners] whatsoever[.]" Report at 12. The evidence firmly supports this

conclusion. In fact, Magistrate Judge Matthewman featured Defendants' concession on this point: "At the evidentiary hearing, Defendants' counsel explicitly stated that Defendants had no direct contact with the [P]artners." *Id.* In short, Magistrate Judge Matthewman did not ignore *King*; on the contrary, he highlighted the fact the Defendants' reliance on it is misplaced.

As detailed extensively in Plaintiffs' Post-Hearing Brief [D.E. 38], an essential feature of the "customer" relationship in Eleventh Circuit case law is that there must be a direct relationship between the investor and either the member firm or the member firm's associated person. *See* Plaintiff's Post-Hearing Br. at 5. Notably, in *Morgan Keegan & Co. v. Shadburn*, the defendant had argued that because "FINRA Rule 12200 is crystal clear in defining the term 'customer' to exclude only brokers and dealers . . . a 'direct customer relationship' is not required" for him to qualify as a "customer" of Morgan Keegan under FINRA rules. *See* 829 F. Supp. 2d 1141, 1148 (M.D. Ala. 2011) (punctuation modified, internal citations omitted). The Defendant urged "that there need not always be a 'direct customer relationship' between the customer and the member firm." *Id.* at 1149 (citations omitted). However, as the court in *Shadburn* noted, the authorities that the defendant relied upon in proffering this argument were cases in which "it was undisputed that the investor was a 'customer' of the member's 'associated person.'" *Id.* (citing *King*, 386 F.3d at 1368; *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 at 58-59 (2d Cir. 2001)). "It was in this factual context that *King* and *John Hancock* rejected the notion that a direct customer relationship between the customer and the *member* was required." *Id.* (emphasis added). In other words, no direct relationship was required between the investor and the FINRA member *because the investor had a direct transactional relationship with the FINRA member's associated person*. However, as Magistrate Judge Matthewman stated,

4

"Defendants here are not customers of the individual Plaintiffs and had no relationship with them whatsoever." *Id.* at 13.

Defendants also attack Magistrate Judge Matthewman's reliance on and treatment of *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 322 (4th Cir. 2013) (*see* Defendants' Objections at 7), but his analysis is entirely consistent with Eleventh Circuit case law. In *Carilion Clinic*, the court opined "that when FINRA uses 'customer' in Rule 12200, it refers to one . . . who purchases commodities or services from a FINRA member in the course of the FINRA member's business activities insofar as those activities are covered by FINRA's regulations, namely the activities of investment banking and the securities business." 706 F. 3d at 325. And Magistrate Judge Matthewman correctly concluded that "[u]nder this interpretation of the term, Defendants would not be 'customers' of any of the [Partners], who are alleged to be associated persons of [Pictet Overseas]." Report at 15. In Eleventh Circuit case law, in every single case where the courts found that an investor qualified as a "customer" of a firm's associated person, the investor either purchased investment products or received investment related services directly from an associated person of a FINRA member. *See* Plaintiffs' Post-Hearing Brief [D.E. 38] at 5. Defendants cannot credibly argue that Magistrate Judge Matthewman's analysis of *Carilion Clinic* was inconsistent with Eleventh Circuit law.

Applying all these principles to the facts at hand, there is no sense in which Defendants can be "customers" within the meaning of FINRA's Rule 12200. After all, Defendants opened bank accounts with Swiss Bank Pictet & Cie. They did not "purchase[] commodities or services from a FINRA member" or a FINRA member's associated person. Defendants offer the unsupported contention (presented as an "undisputed fact") that "a bank in Switzerland is both a bank and a securities firm[,]" (Defendants' Objection at 2.a.), but Defendants' conclusory (and

5

unsupported) assertions regarding the commonalities between FINRA registered broker dealers and FINMA regulated Swiss banks cannot change the character of Defendants' relationship (or lack thereof) to the Partners or Pictet & Cie. To find otherwise would, in the words of Magistrate Judge Matthewman, "lead to an absurd result." Report at 14.

In fact, Defendants' unsupported contention that Pictet & Cie Bank is actually a brokerage firm under Swiss law is utterly irrelevant. The Court need not delve into Swiss law. There is no dispute that Pictet & Cie is a Swiss bank and not a FINRA member. As such, Pictet & Cie is not subject to FINRA rules—including its definition of "customer"—or to FINRA regulation. Defendants urge a customer relationship on the basis of the Partners' alleged approval to open the Trusts' bank accounts at Pictet & Cie, but the activities that give rise to the relationship must be regulated by FINRA. *Carilion Clinic*, 706 F.3d at 327 ("[W]e conclude that 'customer,' as that term is used in the FINRA Rules, refers to one, not a broker or a dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities *insofar as those activities are regulated by FINRA*—namely investment banking and securities business activities.") (emphasis added). There is no dispute that Pictet & Cie's activities are not regulated by FINRA.

Moreover, Magistrate Judge Matthewman categorically rejects Defendants' argument that the entity structure of Pictet & Cie should be disregarded, noting, "Defendants' claim that the business activities of Pictet & Cie are the business activities of the eight partners just because the Partners stand personally liable for Pictet & Cie is fallacious" (Report at 14).[2] However, if the Court were to disregard Pictet & Cie as Defendants urge, Defendants would still be faced

---

[2] In the same way, when they assert that "the Partners own and control both Pictet Overseas and Pictet & Cie" Defendants completely disregard the corporate form of Luxembourg SA, which actually owns Pictet Overseas.

with an insurmountable obstacle: the Geneva forum selection clauses in the account opening documents designate the Courts of Geneva for all disputes. If the Trusts dealt directly with the Partners rather than Pictet & Cie, then the Trusts agreed with the Partners that any disputes would be adjudicated before the Swiss courts. So even if Pictet & Cie were to be ignored as a distinct juridical entity, the Trusts still would be left with their agreement to litigate disputes with the Partners in Switzerland.

Finally, Magistrate Judge Matthewman concludes that whether a customer relationship exists is only the _first_ step in the analysis, independent of the nature of the Partners' business activities. ("[B]ecause Defendants cannot first prove that they were customers of Pictet Overseas or the Partners, the Court need not even reach the question whether the dispute arose in connection with their business activities," Report at 15.) Much of Defendants' Objection addresses this secondary question that would only become relevant if Defendants were able to establish a direct transactional relationship with the Partners, which they fail to do.

### III. CONCLUSION.

This Court should adopt the Magistrate's Report and Recommendation in all respects. The Court should issue a preliminary and permanent injunction barring Defendants from prosecuting their claims in the Arbitration. Plaintiffs respectfully request the Court to (1) enjoin Defendants from proceeding with their claims in the Arbitration; and (2) grant Plaintiffs such further relief that it deems proper, including an award of costs.

Dated:   January 30, 2014

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

By:   /s/ Mark A. Salky
MARK A. SALKY
Florida Bar No. 58221
Email:  salkym@gtlaw.com

**GREENBERG TRAURIG, LLP**
Terry R. Weiss
Florida Bar No. 57906
Email:  weisstr@gtlaw.com
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  (678) 553-2100
Facsimile:  (678) 553-2212

**GREENBERG TRAURIG, P.A.**
Jennifer L. Tomsen
Florida Bar No. 630871
Email:  tomsenj@gtlaw.com
1000 Louisiana Street Suite 1700
Houston, Texas  77002
Telephone:  (713) 374-3500
Facsimile:  (713) 374-3505


**MAYER BROWN LLP**
Mark G. Hanchet (*Admitted Pro Hac Vice*)
Jeremy Schildcrout (*Admitted Pro Hac Vice*)
1675 Broadway
New York, NY  10019
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email:  mhanchet@mayerbrown.com
Email:  jschildcrout@mayerbrown.com

**ATTORNEYS FOR PLAINTIFFS**

CASE NO. 13-81088-CIV-MARRA/MATTHEWMAN

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on the parties listed in the service list below, either via transmission of Notices of Electronic Filing generated by CM/ECF or via overnight mail for those parties who are not authorized to receive electronically Notices of Electronic Filing:

By:  */s/ Mark A. Salky*
Mark A. Salky

## SERVICE LIST

Curtis David Carlson, Esq.
**CARLSON & LEWITTES PA**
One Southeast Third Avenue
Suite 1200
Miami, FL  33131
Tel:  (305) 372-9700
Fax:  (305) 372-8265
Email:  carlson@carlson-law.net

*Counsel for Defendants*