UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81088-CIV-MARRA/MATTHEWMAN

PICTET OVERSEAS INC., PHILIPPE
BERTHERAT, REMY ANTOINE BEST,
RENAUD FERNAND DE PLANTA,
JACQUES JOSEPH DE SAUSSURE,
BERTRAND FRANCOIS LAMBERT
DEMOLE, JEAN-FRANCOIS DEMOLE,
MARC PHILIPPE PICTET, and
NICOLAS LUCIEN PICTET,

               Plaintiffs,

v.

HELVETIA TRUST and AAA
GROUP INTERNATIONAL TRUST,

               Defendants.

**PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, Pictet Overseas Inc. ("Pictet Overseas"), Philippe Bertherat, Remy Antoine Best, Renaud Fernand De Planta, Jacques Joseph De Saussure, Bertrand Francois Lambert Demole, Jean-Francois Demole, Marc Philippe Pictet, and Nicolas Lucien Pictet (together with other individual plaintiffs, the "Individual Plaintiffs") (collectively, "Plaintiffs"), hereby move pursuant to Federal Rule of Civil Procedure 65 for a Permanent Injunction against defendants, Helvetia Trust and AAA Group International Trust (collectively, "Defendants" or the "Trusts") to prevent them from pursuing their claims in an improper forum provided by the Financial Industry Regulatory Authority ("FINRA").

**PRELIMINARY STATEMENT**

Despite having remained on this Court's docket for nearly two years, this case is simple. It turns on a single issue: whether Defendants—who have never opened an account, received any service, or purchased any goods from Plaintiffs—are nevertheless Plaintiffs' "customers" within the meaning of FINRA Rule 12200. Because they are not, there is no basis for arbitration and a permanent injunction must issue. In a twenty-two page Report and Recommendation, Magistrate Judge Matthewman correctly concluded in January 2014 that Defendants are not Plaintiffs' "customers" and recommended that the Court preliminarily and permanently enjoin Defendants from prosecuting their FINRA arbitration against the Plaintiffs. (ECF No. 44). The Court partially adopted the Report and Recommendation in February 2014 (ECF No. 49), preliminarily enjoining the arbitration pending further order of the Court but allowing Defendants the opportunity to conduct discovery before a permanent injunction could issue.

Defendants have spent the last year and a half pursuing broad and costly discovery in a fruitless effort to find evidence to establish that they are "customers" of the Plaintiffs. But discovery instead revealed what is plain to see: there is no evidence that Defendants had any customer relationship of any kind with any of the Plaintiffs. Defendants never opened any accounts with Plaintiffs and never purchased any goods or services from Plaintiffs. In fact, the evidence shows that the Defendants opened bank accounts with and purchased services from an entirely different entity, non-FINRA member Pictet & Cie, which is a Swiss bank and not a party to these proceedings. Because Defendants are not and never were "customers" of a FINRA member or of any associated person of that FINRA member, there is no basis for FINRA arbitration. The Court should issue a permanent injunction.

**FACTS AND PROCEDURAL HISTORY**

Discovery in this case has yielded no evidence even suggesting a customer relationship between Plaintiffs and Defendants because, as Plaintiffs have maintained throughout this proceeding, none ever existed. The dispositive evidence for the instant motion remains identical to the evidence that was presented to the Court on Plaintiffs' motion for a preliminary injunction in late 2013: Plaintiffs continue to rely on the October 23, 2013 Declaration of Déodat Lê (ECF No. 3-1) and related exhibits (ECF Nos. 3-2 through 3-8) and the October 23, 2013 Declaration of Mark A. Salky (ECF No. 3-9) and related exhibits (ECF No. 3-10, 3-11).

The facts can be summarized briefly. Defendants are two St. Lucia Trusts that entered into a relationship with an independent investment manager, Horizon Global Advisors Ltd. and/or Horizon Global Advisors, LLC (collectively, "Horizon"), through Horizon's principal, Brian Callahan ("Callahan"). *See* Defendants' Statement of Claim, Ex. A to Lê Decl. (ECF No. 3-2). In connection with that relationship, Defendants opened custodial bank accounts with non-party Pictet & Cie,[1] an indirect affiliate of Pictet Overseas Inc. ("Pictet Overseas") located in Geneva, Switzerland. *See* Defendants' Account-Opening Documentation with Pictet & Cie, Exs. B (ECF Nos. 3-3, 3-4) and C (ECF No. 3-5) to Lê Decl. Callahan had access to these accounts, ostensibly to facilitate the Trusts' investments. *See* Ex. C. to Lê Decl., (ECF No. 3-5), p. 14. The account opening agreements between the Defendants and Pictet & Cie contain a choice of law

---

[1] It is clear from the Statement of Claim and appended exhibits that Pictet & Cie did not provide investment-related services to Defendants. Investment activity was handled by Horizon and Callahan, who are unaffiliated with Pictet & Cie. *See* Exs. A (ECF No. 3-2), B (ECF Nos. 3-3, 3-4) and C (ECF No. 3-5) to Lê Decl.

3

and forum selection clause pointing exclusively to Geneva, Switzerland. *See, e.g.*, Ex. B to Lê Decl., (ECF No. 3-3) at p. 10.[2]

Defendants contend that Callahan used his access to their custodial accounts with Pictet & Cie to defraud them.[3] *See* Ex. A to Lê Decl. (ECF No. 3-2). However, Defendants did not seek recourse against Horizon or Callahan. And despite the contractual dispute resolution provision contained in their bank account opening documents, Defendants did not initiate an action in Geneva against Pictet & Cie. Instead, Defendants filed a statement of claim with FINRA (the "Arbitration"), naming sixteen different individuals and entities, including Plaintiffs. *Id*. And instead of explaining how or why any of these parties was named in the Arbitration, Defendants lumped together a string of distinct Pictet entities (and one unaffiliated entity with "Pictet" in its name), defined them collectively as "Pictet," and alleged that "Pictet" was somehow involved in Callahan's fraud. *Id*.

FINRA does not require its members to submit to arbitration to resolve claims brought by claimants unless the claimant is the member's "customer" under FINRA Rule 12200, or if the member has explicitly agreed to arbitrate disputes between the claimant and the member. *See* Ex. A to Salky Decl., (ECF No. 3-10). Pictet & Cie is not a FINRA member. So in an attempt to

---

[2] The clause reads: "The relationship between the Bank and the Client shall be governed exclusively by Swiss law. [¶] Any dispute concerning the relationship between the Bank and the Client shall be subject to the exclusive jurisdiction of the Courts of Geneva. An appeal to the Federal Supreme Court of Switzerland is reserved. [¶] The place of execution, of jurisdiction, and the place of any debt collection procedures shall be Geneva. The Bank shall nonetheless be entitled to initiate proceedings in the jurisdiction of domicile of the Client or any other competent jurisdiction."

[3] Indeed, in May 2012, the SEC initiated civil regulatory proceedings against Horizon and Callahan and, as part of those proceedings, obtained an order freezing all investor funds. Callahan had allegedly created and operated a Ponzi scheme to defraud investors like the Defendants. *See generally*, First Amended Complaint in *SEC v. Callahan, et al*., No. 12-cv-1065 (E.D.N.Y. May 31, 2012) (ECF No. 28). No Pictet entity was named in the SEC Complaint.

invoke FINRA jurisdiction, Defendants named Pictet Overseas, which is a FINRA member, in their Statement of Claim. Ex. A to Lê Decl. (ECF No. 3-2).

But in fact, Defendants are not now and never were "customers" of Pictet Overseas or the Individual Plaintiffs. The materials attached to the Statement of Claim Defendants filed in the Arbitration make it clear that Defendants did not open brokerage accounts with Pictet Overseas in Montreal but instead opened custodial bank accounts with Pictet & Cie in Geneva. *See* Exs. B and C to Lê Decl. (ECF Nos. 3-3, 3-4, 3-5). Neither the Defendant Trusts nor their trustees ever opened accounts with Pictet Overseas or the Individual Plaintiffs,[4] and no relationship of any kind exists between the Plaintiffs and Defendants. Lê Decl. (ECF No. 3-1) at ¶¶ 5-8. Indeed, not only does Pictet Overseas not offer custodial or banking services to its clients, it lacks the regulatory capacity to do so. Lê Decl. (ECF No. 3-1) at ¶ 10. Pictet Overseas had not even heard of the Defendant Trusts until receiving a copy of the Statement of Claim in September, 2013. Lê Decl. (ECF No. 3-1) at ¶ 14. Pictet Overseas has no agreement of any kind with Defendants, and certainly not an agreement to arbitrate. Lê Decl. (ECF No. 3-1) at ¶ 15.

Plaintiffs brought suit in this Court to enjoin the improper Arbitration from proceeding and moved for the issuance of a preliminary and permanent injunction. (*See* ECF Nos. 1, 3). On January 2, 2014, after multiple rounds of briefing and an evidentiary hearing, Magistrate Judge Matthewman issued a 22-page Report and Recommendation (the "Matthewman Report"), recommending that the District Court grant Plaintiffs' motion and issue a preliminary and permanent injunction. (ECF No. 44). According to the Matthewman Report, Defendants were not customers of Pictet Overseas or the Individual Plaintiffs (*id*. at 11-15) and Plaintiffs had no reasonable expectation that they might face FINRA arbitration. *Id.* at 15. Magistrate Judge

---

[4] While the Lê Declaration makes reference only to Pictet Overseas and not the Individual Plaintiffs, it is clear that Defendants never held accounts with the Individual Plaintiffs.

Matthewman went on to conclude that the Court should issue a preliminary injunction and a permanent injunction, because "additional discovery and/or a second evidentiary hearing would not change the fact that Defendants were never customers of Plaintiff Pictet Overseas, the FINRA member, or the individual Plaintiffs . . . [and] Defendants have not proffered any anticipated discovery that could conceivably alter the result in this case." *Id.* at 21.

The Court adopted the findings of fact and conclusions of law in the Matthewman Report and its recommendation that a preliminary injunction be issued. (ECF No. 49). In so doing, the Court noted Defendants' request to seek additional discovery and declined to issue a permanent injunction until Defendants were afforded the opportunity to seek that discovery. *Id*.

Thereafter, Defendants engaged in discovery for over a year in an effort to support their theory. Defendants were even afforded an extension of the discovery deadline to pursue Hague Convention discovery aimed at materials located in Switzerland related to Pictet & Cie. (*See* ECF Nos. 116, 118). Plaintiffs, for their part, produced all responsive, available documents and sought virtually no discovery from Defendants. Defendants' broad discovery efforts have revealed no evidence that contradicts the basic reality that Defendants have no relationship of any kind with any of the Plaintiffs and Defendants simply are not Plaintiffs' "customers."

Plaintiffs now move for a permanent injunction.

## ARGUMENT

### I. Legal Standard

In order to obtain a permanent injunction, a movant must demonstrate that (1) it has prevailed in establishing the violation of the right asserted in his complaint; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *KH Outdoor, LLC v. City of Trussville*,

6

458 F.3d 1261, 1268 (11th Cir. 2006).  The standard is virtually identical to that for a preliminary injunction, except that for a permanent injunction, the movant must show actual success on the merits (instead of likelihood of success), which the Eleventh Circuit has found to be the most important factor in the injunction analysis,[5] and most courts do not consider the public interest element in deciding whether to issue a permanent injunction.  *Rubenstein v. Florida Bar*, 72 F. Supp. 3d 1298, 1318 (S.D. Fla. 2014) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987)).

**II.	Plaintiffs Have Prevailed on the Merits**

The sole question at issue in this litigation—dispositive of whether Plaintiffs have prevailed on the merits—is whether the Defendants are "customers" of Pictet Overseas or the Individual Plaintiffs under FINRA Rule 12200.  The evidence and prevailing law unquestionably dictate that they are not.

A.	<u>Defendants Are Not Customers of Pictet Overseas</u>

As the Court has recognized (*see* ECF Nos. 44, 49), Eleventh Circuit case law has emphasized predictability in the construction of FINRA Rule 12200, which must be read so as not to "upset the reasonable expectations of [FINRA] members."  *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993).  Echoing the Eleventh Circuit's mandate for predictability, the Second Circuit recently set forth a plain, bright-line test for what constitutes a "customer" under this FINRA Rule.  In *Citigroup Global Markets Inc. v. Abbar* ("*Abbar*"), the Second Circuit held that there is need for a "simple" and "predictable" definition of the term "customer" and defined it as follows:

---

[5] *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *White v. Alcon Film Fund, LLC*, 955 F. Supp. 2d 1381, 1383 (N.D. Ga. 2013).

> [A] "customer" under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member.

761 F.3d 268, 275 (2d Cir. 2014).

*Abbar*'s straightforward test for defining who is and who is not a "customer," ensures the predictability that the *Wheat First* Court demanded.  Indeed, the inquiry here is simple:

> The only relevant inquiry in assessing the existence of a customer relationship is whether an account was opened or a purchase made; parties and courts need not wonder whether myriad facts will coalesce into a functional concept of the customer relationship.

761 F.3d at 275 (citation omitted).  Defendants neither opened accounts nor made a purchase from any of the Plaintiffs.  They are not customers within the meaning of Rule 12200.

Courts have relied on *Abbar* for its approach to the "customer" inquiry.  In *Sagepoint Financial, Inc. v. Small*, No. 15 Civ. 0571, 2015 WL 2354330 (E.D.N.Y. May 15, 2015), the court applied the *Abbar* test to determine that the defendant was not the "customer" of the plaintiff for the purposes of FINRA Rule 12200.  The court found that, given the simple definition of "customer" set forth in *Abbar*, it could issue an injunction enjoining the FINRA arbitration without need for discovery or an evidentiary hearing because, like here, "the facts essential to determining whether Defendant is Plaintiff's 'customer' are not legitimately in dispute." *Id.* at *3.  The Court reasoned:

> Seeking to clarify the meaning of the term within the context of FINRA Rule 12200, the Second Circuit in *Abbar* held that a "customer" is one who, while not a broker or dealer, either "(1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Abbar*, 761 F.3d at 275. Applying this definition to the undisputed facts here, it is clear that Defendant is not a "customer" of Plaintiff. Defendant does not allege that she ever purchased goods or services from Plaintiff, nor does she allege that she ever held an account with Plaintiff.

8

*Id*. at *4. The injunction in *Sagepoint* has since been made permanent. *See* No. 15 Civ. 0571, Final Judgment and Permanent Injunction (ECF No. 28) (E.D.N.Y. June 2, 2015).

Courts within the Eleventh Circuit have approached the FINRA "customer" analysis in a manner consistent with *Abbar*. For instance, in *Morgan Keegan & Co. v. Shadburn*, 829 F. Supp. 2d 1141, 1148 (M.D. Ala. 2011), the court examined the scope of the definition of "customer" under FINRA Rule 12200 and ultimately rejected Defendant's broad view of what constitutes a "customer." In granting Plaintiff's request for an injunction enjoining the Defendant's purported FINRA arbitration, the *Shadburn* court relied on, among other authority, an Eighth Circuit case, observing that "other courts arguably had 'taken a broad view' of the term 'customer,' but [the Eighth Circuit] explained that 'in all of these cases there existed some brokerage or investment relationship between the parties.'" *Id*. (citing *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc*., 264 F.3d 770, 772 (8th Cir. 2001)).

And as recently as just last month, Magistrate Judge Matthewman recommended that this Court issue a preliminary injunction to enjoin a FINRA arbitration in the absence of any evidence that the Defendant "purchased a commodity or service from [the Plaintiff] or an associated person of [the Plaintiff]." *UBS Fin. Servs., Inc. v. Bounty Gain Enters.*, No. 14 Civ. 81603 (Marra/Matthewman), 2015 WL 4154124, at *14 (S.D. Fla. July 9, 2015). Magistrate Judge Matthewman looked to the Fourth Circuit's definition of "customer" which, similar to that set forth in *Abbar*, refers to "one, not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are covered by FINRA's regulation, namely the activities of investment banking and the securities business." *Id*. at *13 (quoting *UBS Fin. Servs. Inc. v. Carilion Clinic*, 706 F.3d 319, 325 (4th Cir. 2013)).

Applying the Second Circuit's definition of "customer" here (or the iterations of that definition articulated by the Fourth and Eighth Circuits), it is clear that the Defendants are not Plaintiffs' "customers" within the meaning of FINRA Rule 12200. It is beyond dispute that Defendants did not "purchase a good or service" from any of the Plaintiffs. The evidence also shows that Defendants had no agreement whatsoever with any of the Plaintiffs. Defendants actually opened bank accounts and purchased banking services from a non-FINRA member, Swiss bank Pictet & Cie. *See* Account Opening Documents between Defendants and Pictet & Cie (describing banking services to be provided by Pictet & Cie), Exs. B and C to Lê Decl., (ECF No. 3-3, 3-4 and 3-5); *see also* Matthewman Report (ECF No. 44) at 13. Pictet Overseas did not (and could not) offer the custodial and banking services Defendants obtained from Pictet & Cie. In fact, Pictet Overseas had not even heard of Defendants (its supposed "customers") until it received a copy of the FINRA Statement of Claim. Lê Decl. (ECF No. 3-1) at ¶¶ 10, 14, 15. The lack of *any connection or any relationship of any kind* between the Plaintiffs and Defendants is absolute.

B.  Defendants Are Not Customers of the Individual Plaintiffs

Defendants attempt to escape this inexorable conclusion with a convoluted theory: they maintain that because the ultimate owners of Swiss bank Pictet & Cie also are "associated persons" of FINRA member Pictet Overseas, their customer relationship with Pictet & Cie means that they also are "customers" of the Individual Plaintiffs. Defendants' reasoning, as deciphered by the Court, is as follows:

> (1) the eight individual Plaintiffs-partners are associated persons of Plaintiff Pictet Overseas pursuant to the FINRA Rules,[6] (2) the eight individual Plaintiffs-partners owned and controlled Pictet &

---

[6] For the avoidance of doubt, Pictet Overseas clearly denies that the Individual Plaintiffs are "associated persons" under FINRA Rules.

>Cie and were alter egos of Pictet & Cie, (3) Defendants were customers of Pictet & Cie, (4) by virtue of being customers of Pictet & Cie, Defendants were customers of the eight individual Plaintiffs-Partners, so, ergo, (5) Defendants were customers of associated persons of Plaintiff Pictet Overseas.

(ECF No. 91, p. 12).

Defendants' pretzel logic is precisely what the *Abbar* court sought to avoid in creating a simple, bright-line test for determining the existence of a "customer" relationship. *Abbar*, 761 F.3d at 276 ("parties and courts need not wonder whether myriad facts will coalesce into a functional concept of the customer relationship"). The undeniable and dispositive fact is that Defendants never opened an account with Plaintiffs and they never purchased goods or services from Plaintiffs. *See* Lê Decl. (ECF No. 3-1) at ¶¶ 5-8, 14-15. They are not "customers."

And even if the fact that Defendants never held accounts or purchased products or services from Plaintiffs was not dispositive—which it is—Defendants' unwieldy "alter ego" theory is wholly devoid of factual support. *See* Lê Decl. (ECF No. 3-1) at ¶ 11 ("Pictet & Cie is a bank based in Geneva, Switzerland . . . is an indirect affiliate of Pictet Overseas Inc. and a separate and distinct entity. . . . Pictet Overseas Inc. maintains its own books and records and observes all corporate formalities; moreover, as a regulated brokerage firm, Pictet Overseas Inc. maintains regulatory books and records pursuant to the directives of its regulator, FINRA."). Defendants have pointed to no evidence to suggest otherwise. As Magistrate Judge Matthewman noted in dispensing with Defendants' strained theory:

>Defendants cannot pierce the corporate veil and establish that the individual Plaintiffs had such duties to Defendants. [T]he Defendants placed no investments with Pictet Overseas, a Canadian brokerage company, or with any of its associated persons. . . . Defendants' claim that the business activities of Pictet & Cie are the business activities of the eight partners just because the partners stand personally liable for Pictet & Cie is fallacious, and Defendants cannot demonstrate that Brian Callahan was an

11

>> agent of Plaintiffs and that they should be held liable for his actions.

Matthewman Report (ECF No. 44) at 14.

Plaintiffs have prevailed on the merits.  Defendants are not "customers" of Plaintiffs.

### III. Plaintiffs Have Satisfied the Remaining Elements for a Permanent Injunction

The remaining requirements for a permanent injunction, already established at the preliminary injunction phase (*see* Matthewman Opinion (ECF No. 44 at 18-20)), remain satisfied here.

First, irreparable harm will result if the Court does not order injunctive relief, as Plaintiffs would be forced to arbitrate with Defendants, despite never having agreed to do so.  *See* Lê Decl. (ECF No. 3-1) at ¶ 15 ("In summary, Pictet Overseas does not have an agreement of any kind with either Helvetia Trust or AAA Group International Trust, let alone an agreement to arbitrate"); *Dean Witter Reynolds Inc. v. Pollack*, No. 96–6397–CIV, 1996 WL 1044969, at *4 (S.D. Fla. May 29, 1996); *Chase Manhattan Bank USA, N.A. v. Nat'l Arbitration Council, Inc.*, No. 3:04 Civ. 1205, 2005 WL 1270504, at *3 (M.D. Fla. May 27, 2005) ("Being compelled to arbitrate a claim in the absence of an agreement to arbitrate that claim constitutes an irreparable injury[.]") (citation omitted).  A party "suffers irreparable harm when it is forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."  *Shadburn*, 829 F. Supp. 2d at 1153 (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)).

Second, the threatened injury to Plaintiffs outweighs whatever damage the proposed injunction may cause Defendants.  The only harm Defendants face is the "inconvenience" of pursuing their claims in Geneva, Switzerland, which is the proper forum for their claims and is the forum to which they contractually agreed.  Plaintiffs meanwhile face the irreparable injury of

being forced to participate in an improper arbitration.  *See, e.g., Pollack*, 1996 WL 1044969, at *4 (permitting arbitration on nonarbitrable issues to proceed would cause greater harm to plaintiff than an injunction enjoining arbitration).

Finally, while "most courts do not consider the public interest element in deciding whether to issue a permanent injunction," *Rubenstein*, 72 F. Supp. 3d at 1318, the issuance of a permanent injunction in this case would not be adverse to the public interest.  *See Pollack*, 1996 WL 1044969, at *4 ("granting this action does not disserve the public interest because the public has no interest in compelling arbitration of claims which are not subject to arbitration"); *Shadburn*, 829 F. Supp. 2d at 1153 (finding that an injunction would serve the public interest by avoiding the time and expense that would result from an improper arbitration).

## CONCLUSION

For the foregoing reasons, this Court should issue a permanent injunction barring Defendants from prosecuting their claims against Plaintiffs through FINRA arbitration. Plaintiffs respectfully request the Court to issue an order that:  (1) permanently enjoins Defendants from proceeding with their claims in the Arbitration; and (2) grants Plaintiffs any further relief the Court deems just and proper.

Dated:  August 17, 2015

                Respectfully Submitted

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

By: ___/s/ *Mark A. Salky*___
MARK A. SALKY
Florida Bar No. 58221
Email:  salkym@gtlaw.com

IAN M. ROSS
Florida Bar No. 91214
Email:  rossi@gtlaw.com

**GREENBERG TRAURIG, LLP**
Terry R. Weiss
Florida Bar No. 57906
Email:  weisstr@gtlaw.com
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  (678) 553-2100
Facsimile:  (678) 553-2212

**GREENBERG TRAURIG, P.A.**
Jennifer L. Tomsen
Florida Bar No. 630871
Email:  tomsenj@gtlaw.com
1000 Louisiana Street Suite 1700
Houston, TX 77002
Telephone:  (713) 374-3500
Facsimile:  (713) 374-3505

**MAYER BROWN LLP**
Mark G. Hanchet (Admitted Pro Hac Vice)
Robert W. Hamburg (Admitted Pro Hac Vice)
1221 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email:  mhanchet@mayerbrown.com
Email:  rhamburg@mayerbrown.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2015, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on the parties listed in the service list below, either via transmission of Notices of Electronic Filing generated by CM/ECF or via overnight mail for those parties who are not authorized to receive electronically Notices of Electronic Filing:

By:  /s/ Mark A. Salky
Mark A. Salky

## SERVICE LIST

Curtis David Carlson, Esq.
**CARLSON & LEWITTES PA**
One Southeast Third Avenue
Suite 1200
Miami, FL  33131
Tel:  (305) 372-9700
Fax:  (305) 372-8265
Email:  carlson@carlson-law.net

*Counsel for Defendants*