UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:13-CV-81088-KAM

PICTET OVERSEAS, INC., PHILIPPE
BERTHERAT, REMY ANTOINE BEST,
RENAUD FERNAND DE PLANTA,
JACQUES JOSEPH DE SAUSSURE,
BERTRAND FRANCOIS LAMBERT
DEMOLE, JEAN FRANCOIS DEMOLE,
MARC PHILIPPE PICTET, AND
NICOLAS LUCIEN PICTET,

     Plaintiffs,

vs.

HELVETIA TRUST and AAA
GROUP INTERNATIONAL TRUST,

     Defendants.

_____/

## DECLARATION OF BRIAN R. CALLAHAN

Pursuant to 28 U.S.C. §1746, Brian R. Callahan hereby declares:

1.     I make the statements in this declaration based upon my personal knowledge.

2.     I was the managing member of Horizon Global Advisors Ltd. ("Horizon").
Horizon was an independent asset manager.  Horizon managed customer's assets were held in
accounts maintained at Pictet & Cie.

3.     I am familiar with Marc Dupraz because he was employed at Pictet & Cie as a
Relationship Manager.

4.     Horizon introduced potential customers to Pictet & Cie, including both AAA
Group International Trust and Helvetia Trust.  Horizon would introduce a potential account to
Pictet & Cie by notifying Marc Dupraz and providing him with the Pictet & Cie application

1

forms signed by the customer and the supporting documents provided by the customer.

5.     For example, attached to this declaration as Exhibit 1 are true and correct copies of the application papers that AAA Group International Trust signed and provided to open an account with Pictet & Cie.  The application papers were sent by Horizon to Pictet & Cie sometime in October of 2010.  The account number written in on Exhibit 1 was filled in after Horizon provided the application forms to Pictet & Cie.

6.     Attached to this declaration as Exhibit 2 is a true and correct copy of a series of electronic mail messages between me and Marc Dupraz relating to the opening of the account for AAA Group International Trust.  I personally sent the emails that indicate they are from me and I personally received the emails that indicate they are to me. I am not familiar with the stamp that is on the first page of Exhibit 2 and that stamp was not on the original emails sent to or from me.

7.     The same process would have been followed with respect to the opening of an account at Pictet & Cie for Helvetia Trust.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2015.

BRIAN R. CALLAHAN

Exhibit 1



## Application to Open a Banking Relationship for a Trust

Client No. _____

The undersigned, hereinafter, the "Trustee":

| TRUSTEE(S) | | |
|---|---|---|
| First and Last Name(s) Company Name | Sole signatory Jerry Keith Clary | Thomas Trust |
| Date of Birth Incorporation Date | August 15, 1956 | July 15, 2031 |
| Nationality Registered Office | US person | 48 Mitchell Street, Castries St. Lucia |
| Address | 11986 Southern Boulevard #200 Royal Palm Beach Florida 33411 | 48 Mitchell Street, Castries St. Lucia |

PLEASE ATTACH COPY OF AN IDENTIFICATION DOCUMENT OR CONSTITUTIVE DOCUMENTS (AS PER THE CDB)

Declare(s) that he/she/they hereby wish(es) to open one or more accounts and one or more securities accounts at Pictet & Cie (hereinafter, the "Bank") as Trustee of the Trust mentioned below.

In all business relations with the Bank, only the signatures appearing on the record side (or attached as an annex hereto) shall be legally valid and binding as long as they have not been expressly revoked in writing by the Trustee.

| TRUST | |
|---|---|
| Name of Trust | AAA Group International Trust |
| Incorporation Date | July 20, 2010 |
| Governed by laws acts of (country) | St. Lucia |
| Type of Trust | x discretionary        ☐ revocable<br>☐ other (life interest, fixed trust)        X irrevocable |

ATTACH DEED OF TRUST for "Declaration by the Trustee(s)" form as the case may be]

| | SETTLOR | PROTECTOR |
|---|---|---|
| First and Last Name(s) Company Name | Jerry Keith Clary | Jerry Keith Clary |
| Date of Birth Incorporation Date | August 15, 1956 | August 15, 1956 |
| Nationality Registered Office | US person | US person |
| Address | 11986 Southern Boulevard #200 Royal Palm Beach Florida 33411 | 11986 Southern Boulevard Royal Palm Beach Florida 33411 |

PLEASE ATTACH COPY OF AN IDENTIFICATION DOCUMENT OR CONSTITUTIVE DOCUMENTS (AS PER THE CDB)

# LIST OF AUTHORISED SIGNATURES

| First and Last Name(s) or Company Name | Position and Job Title | Type of Signature Indiv./Collective | Specimen Signature |
|---|---|---|---|
| Jerry Selby Davy | Trustee, Sole signatory | Individual | *[signature]* |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

If the type of signature is not properly indicated in the corresponding column above, any one of the persons listed hereinabove shall be deemed to be empowered to sign jointly with any one of the others.

The following general business conditions shall apply to the business relationship between the parties. The Client declares that he/she has read these and hereby expressly agrees to the provisions contained therein.

## Pictet & Cie

### GENERAL BUSINESS CONDITIONS

## I.  GENERAL PROVISIONS

### Article 1 – Scope

These General Business Conditions shall govern the legal relationship between Pictet & Cie (hereinafter, "the Bank") and its Clients. They shall govern existing business relationships upon their taking effect, as well as relationships established thereafter.

The General Business Conditions shall remain valid regardless of any other standard contractual forms or equivalent documents that the Client may have signed. Any subsequent amendments hereto shall also be binding upon the Client.

2

Reserved uses

- particular agreements entered into between the Bank and the Client;
- framework or master agreements among Swiss banks or with foreign banks;
- deemed practices in certain areas of business, namely stock exchange transactions and matters handled through correspondents in other countries.

## Article 2 – Current Account, Bank Giro and Custody

Upon accepting to open an account and a securities account (hereinafter referred to as the "account") in the Client's name, the Bank undertakes to:

- hold the assets deposited by the Client in safe-keeping;
- execute instructions from the Client to transfer funds and/or make investments, provided the Client holds sufficient assets for the transactions in question;
- receive cash, securities or other financial assets that will be transferred to the account in the Client's favour;

Nevertheless, the Bank reserves the right not to accept assets or to refuse to execute a transaction proposed to it by the Client at its absolute discretion and without having to justify its decision.

Unless otherwise agreed upon with the Client, the Bank shall systematically offset any credit and debit items posted to current accounts.

## Article 3 – Acceptance and Remittance of Funds and Assets

The Bank shall be under no obligation to:

- invest cash balances standing to the credit of the account or manage the assets deposited therein, unless specifically agreed upon in writing with the Client;
- credit the Client's account with funds or other assets transferred to him if the Client's name and account number are not clearly indicated by the instructing party. If the Client's account number and name do not match, the Bank may either return the assets or keep them without crediting the account pending clearer instructions. The same shall apply in the event the instructing party indicates a code name or pseudonym along with the account number.

As regards any instruction to withdraw funds or assets, the Bank reserves the right, at its sole discretion, either to pay out the amount in cash or banker's drafts or to request the Client to indicate an account at another bank to which the funds or assets shall be transferred.

## Article 4 – Client Instructions

It shall be the Client's responsibility to send the Bank instructions far enough in advance so that it may take all the Client's required any actions required to maintain or increase the value of the assets held in the account, including, inter alia, to:

- invest or reinvest assets;
- buy, sell or exercise subscription, conversion or options rights;
- accept or refuse a takeover bid on either a cash or share exchange basis;
- pay any outstanding balance due on securities (whether in certificate or book entry form), instruments, or any other investments that have not been entirely paid up;
- exercise voting rights at shareholders' meetings or other stakeholders' meetings.

3

In the absence of any instructions from the Client, or if the instructions are not obtained in a timely manner, the Bank shall be entitled, but not under the obligation, to take whatever action it deems fit, within the limits of the law. Under no circumstances shall the Bank be liable to the Client for any loss or damages incurred as a result of any such actions.

The Bank shall not be under any obligation to initiate or participate in any judicial action, arbitration proceeding or any other contentious or non-contentious proceedings, whether in Switzerland or abroad, for the purpose of representing the Client's interest, including, inter alia, any action for damages with respect to the securities or assets held by the Client. Should the Bank agree to represent the Client in any such proceedings, the Client hereby agrees to indemnify the Bank in full.

### Article 5 – Current Account Balance

No interest shall be earned on any current account, regardless of its reference currency.

Interest charges shall be due on all debit balances at a rate fixed by the Bank. Said interest charges shall be due without prejudice to any other claims that the Bank may have against the Client.

Interest charges shall be debited automatically and without formal notice. Unless otherwise agreed upon with the Client, any sums owed to the Bank by the Client shall be due and payable immediately, even if the Bank does not expressly demand repayment thereof.

In cases where statutory or regulatory restrictions apply, the Bank may hold the Client's accounts in a currency other than that initially agreed upon without incurring any liability for any loss or damages that the Client may suffer as a result thereof.

The Bank may debit any other current account held by the Client if the Client does not hold an account in the currency of a transaction or if his assets are insufficient.

## II.   COMMUNICATIONS BETWEEN THE BANK AND THE CLIENT

### Article 6 – Communications by Telephone, Telex and Facsimile Transmission

The Bank may not be held liable for any loss or damages arising from the transmission, reception, interruption or handling of messages, stock exchange orders or fund transfer instructions by telephone, telex or facsimile, or as a result of the fraudulent use of the aforesaid means of communication, except in the event of gross professional misconduct on its part.

The Bank shall be authorized to record telephone conversations with the Client.

### Article 7 – Communications by Electronic Mail

Electronic mail means any service provided by the Bank via a computer platform, including, inter alia, electronically transferring computer files, data, information or e-mail, accessing the Bank's on-line computer system, printing account statements or bank correspondence from a remote computer, and placing stock exchange orders or instructions for cash or securities transfers.

The Internet and Extranet networks, as well as leased and dial-up telephone lines, use public and private telecommunication infrastructures which fall outside the Bank's control and offer no particular security protections. The Bank, therefore, may not be held liable for any risks related to a power outage, disconnection, line cut, system failure, disturbance or the overloading or locking-up of the systems or networks involved therewith.

The Client shall use only the technical facilities supplied by the Bank to authenticate his identity vis-à-vis the Bank. The Client shall keep his access codes and facilities in a secure place and not disclose them. The Bank reserves the right, but shall be under no obligation, to require the Client to authenticate his identity by other means and to defer execution of his instructions pending compliance therewith.

The Client shall alone bear the expense of acquiring, installing, configuring, managing and maintaining the computer systems and hardware required for accessing the Bank's on-line services.

The Bank may not be held liable for any loss or damages that may arise from the transfer, loss, alteration, destruction, reception, interception or forwarding of any message, order or instruction sent by electronic mail, except in the event of gross professional misconduct on its part.

## Article 8 - Signatures

Only those authorized signatures provided to the Bank in writing shall be valid vis-à-vis the Bank until it receives written revocation thereof, regardless of any contrary entries in the Commercial Register or any other official publication.

The Bank may not be held liable for omission or inaccurate authentication of the Client's identity, fraudulent use of signatures or failure to detect forgery, except in the event of gross professional misconduct on its part.

The Bank shall not be under any obligation to inquire into the reason why an authorized person wishes to carry out a particular transaction, subject to the legal and regulatory provisions in combating money laundering. The Client or his heirs, assigns, successors or beneficial owners shall alone bear the risk of any abuse, loss or damages that he/they may suffer as a result of transactions carried out by an authorized person.

## Article 9 - Bank Correspondence

The Client shall be deemed to have received any notice, advice or correspondence sent by the Bank to the most recent address provided by the Client. The date appearing on the archived copy or on the shipping log kept by the Bank shall be deemed to be the date the item was sent. Correspondence retained by the Bank ("Hold Mail") shall be deemed to have been delivered on the date indicated thereon.

In the absence of gross professional misconduct on the part of the Bank, the Client alone shall bear all risks, such as loss of items, delays, misunderstandings, errors, alteration or multiple deliveries arising from the use, interruption or failure of any communication or transmission facility or system, including, inter alia, post, telephone, telegraph, telex, facsimile, e-mail or IT means, or of any public or private transport company. In the event of a dispute, the burden of proof shall be with the Client.

## Article 10 - Claims and Grievances

In the event the Client has a grievance with respect to any transaction carried out by the Bank, or disputes the contents of an account or portfolio statement, whether or any other document issued by the Bank, the Client shall notify the Bank of his grievance in writing within no more than 30 days of receipt of the document in question, unless the Bank has stipulated a shorter deadline in the said document or in such cases that necessitate immediate reaction on the part of the Client.

If the Client fails to notify the Bank of his grievance within the prescribed timeframes, he shall be deemed to have acknowledged and assented to the content of the statement, valuation or document in question.

Express or tacit approval of an account statement applies to all booked transactions, as well as to any reservations expressed by the Bank concerning said statement. The information contained on an account statement may not be contested when it refers to execution confirmations that have not been contested within the prescribed deadline.

### Article 11 – Records

The Bank shall retain the records relating to the Client's accounts and security accounts for the statutory period of 10 years.

## III. EXECUTION OF BANKING TRANSACTIONS

### Article 12 – Value Dates

When executing transfer instructions or stock exchange orders on the Client's account, or when crediting funds thereto, the Bank shall determine the value date on which the transaction shall be posted to the account in accordance with industry usages.

In the scope of all dealings with the Bank, Saturday shall be treated as a public holiday in the same manner as other public holidays defined by federal and cantonal provisions.

### Article 13 – Credits and Debits

Cash, securities and other assets shall in all cases be credited to the Client's account subject to collection or delivery.

The Client authorizes the Bank to debit from his account as at the appropriate value date any funds or assets credited in error, even if the erroneous balance had already been expressly or implicitly acknowledged as correct.

The Client may not object to the Bank's claim for repayment or restitution on the grounds that he has already disposed of the funds or assets which were credited to his account in error or that he was entitled, in good faith, to believe that the funds or assets in question were intended for him.

### Article 14 – Buy and Sell Orders

The Bank shall execute and transmit orders to buy and sell securities, currencies and other investments at the Client's risk as per his instructions and in accordance with the laws, rules and usages in force on the relevant continent. In the event execution of the transaction is impossible or unlawful, the Client shall alone bear all loss, damages or other consequences arising therefrom.

Orders may be executed on any market chosen by the Bank, including the unlisted securities market or by way of private contract, unless otherwise expressly instructed by the Client. The Bank shall be at liberty to execute orders with either itself or another of its clients as the counterparty. The Bank shall choose the legal intermediaries (brokers) to whom it entrusts the execution of orders.

### Article 15 – Sufficient Assets

All orders must be fully covered by sufficient available assets, unless otherwise agreed upon with the Client. In any event, the Bank reserves the right to carry out the reverse transaction and to post the result of both transactions to the Client's account.

### Article 16 – Liability for Non-execution

The Client shall bear any loss or damages that may be incurred as a result of the non-execution, partial execution, late execution or incorrect execution of an order, except in the event of gross professional misconduct on the part of the Bank.

6

IV. OBLIGATIONS OF THE CLIENT

Article 17

The Client undertakes to:

- provide the Bank with all relevant details regarding the origin of his assets upon request;

- immediately notify the Bank on his own accord of any change of name, business name, marital status, nationality or address; the Client shall be under the same obligation as regards the persons authorised to act on his behalf said obligation shall stand even if notice of such change is given by way of an entry in a public register or any other form of publication; the Client acknowledges that he has been informed of the issues and problems concerning dormant accounts;

- provide the Bank with clear and precise instructions, namely by clearly identifying the beneficiaries of fund transfers (name and account number) and indicating the basis of execution of his orders; the Bank may not be held liable for any loss or damage arising from ambiguous or unclear instructions and reserves the right to defer or refuse to execute said orders;

- immediately submit a detailed complaint in writing should he wish to dispute any transaction carried out on his account;

- comply with all applicable laws and regulations in all dealings with the Bank;

The Client acknowledges that the Bank shall not be held liable for any damages that the Client may incur as a result of indirectly legal or tax status.

V. OBLIGATION TO THIRD PARTIES

Article 18 – Liability

If the Bank engages the services of a third party, whether an individual or legal entity (including entities belonging to the same group as the Bank), to manage the Client's assets, execute his orders or keep his assets under custody, it may only be held liable vis-à-vis the Client for its care in selecting and instructing such third party. If the third party is chosen or appointed by the Client, the Bank may not be held liable under any circumstances. The foregoing shall apply namely (but not only) in cases where the Client appoints a third party asset manager.

Article 19 – Sub-custodian

The Bank and its correspondents are expressly authorised to keep in their custody, or to entrust to the custody of professional depositaries, securities (whether in certificate or book entry form), precious metals and other valuables in an open or collective safekeeping account, thereby entitling the Client to a stake in the securities, precious metals or other valuables collectively deposited. The laws and usages of the place of custody shall be reserved. Custody of these assets is undertaken solely for the Client's account and at his sole risk and peril.

Article 20 – Assets in Foreign Currencies

The Client's assets, holdings, claims, securities (whether in certificate or book entry form), instruments and current account balances denominated in foreign currencies, as well as securities held safely or predominantly outside of Switzerland, shall be held with the Bank's foreign correspondent in the name of the Bank but for the account and risk of the Client.

These assets may be subject to the laws, usages, rules and conventions of the place of custody or of the country of the currency in which they are denominated.

The Client shall in particular bear the risks arising from legal, economic, political, fiscal or administrative restrictions imposed by the country where the assets are deposited or kept in safekeeping, or by the country in whose currency the assets are denominated, as well as the risk of default of the Bank's foreign correspondent.

All fees, commissions, taxes and other charges incurred in connection with the holding of these assets shall be borne entirely by the Client.

## VI.   CHEQUES

### Article 21

The Bank reserves the right to honour a cheque after the expiration of the period for presentment, to refuse to honour any cheque for which there are insufficient funds or to cancel the Client's cheque facility at any time with immediate effect and without giving a reason. In the latter case, the Client's unused cheques must be surrendered immediately to the Bank.

In the event the Bank refuses to honour a cheque, it may not be held liable for the consequences of any information provided to the payee or any third party, particularly in relation to the unavailability of sufficient funds.

In the event any purchased or discounted bills of exchange, cheques and other similar instruments are not honoured, or if the amounts thereof are not freely available, the Bank may reverse the sums credited to the account while retaining all rights inherent to the said instruments pending full payment thereon.

## VII.   CUSTODY ACCOUNT REGULATIONS

### Article 22 – Acceptance of items for deposit and safekeeping

The Bank shall agree to accept:

a)   in an open safekeeping account: securities (whether in certificate or book-entry form), precious metals and other assets, such as money market and capital market investments that are not incorporated in a security

b)   in a sealed safe deposit: securities, documents, valuables and any other assets deemed appropriate for safekeeping in a bank deposit

The Bank reserves the right not to accept certain assets or types of security for safekeeping without having to justify its decision.

The Bank shall keep all the assets entrusted to it for safekeeping in the same careful and diligent way as it keeps its own assets.

### Article 23 – Open safekeeping accounts

It is the Client's responsibility to provide the Bank, in due time, with instructions concerning the day-to-day administration of the assets held in safekeeping, in particular the collection of coupons and securities called in for redemption, renewal of coupon sheets, exchange of securities, etc. Article 6 of the present General Business Conditions shall apply for all other cases.

The Client acknowledges that the Bank is authorised to keep assets in a collective account or to place them in a central securities depository. Article 19 of the present General Business Conditions shall remain reserved.

### Article 24 – Representation at shareholder meetings

Unless it has been issued with a special mandate or particular instructions to do so by the Client, the Bank shall not assume any obligation to represent the Client at shareholder meetings, to exercise any voting right or other rights pertaining to the securities held in deposit on its Client's behalf, or to notify the Client of information concerning said shareholder meetings and the exercise of rights pertaining to the securities in question. Unless

it has been issued with particular instructions from the Client, and subject to mandatory legal provisions, the Bank shall determine at its sole discretion the manner in which it exercises voting rights at said shareholder meetings.

Article 25 - Transparency obligations

The Client acknowledges that the Bank may be obliged to disclose his/her identity to third parties in Switzerland or abroad, when legal or regulatory provisions - in particular at the place where the securities are held or issued - or security exchange regulations demand this.

The Client shall, moreover, remain solely responsible for complying with obligations to report any overstepping of thresholds regarding holdings in quoted companies as well as announcing transactions conducted by members of the management. In this regard, the Bank shall not assume any joint or subsidiary obligation or any obligation to warn the Client.

Article 26 - Sealed safekeeping accounts

valuables, documents and other appropriate items (i.e. of a lawful nature and origin) are the only items that may be accepted in a sealed safekeeping account. It follows that items which are flammable, perishable, hazardous, fragile or otherwise unsuited for storage on bank premises may not be placed in a sealed safekeeping account. The depositor shall be liable for all consequences and any loss or damages that may result from failure to comply with this requirement. For safety purposes, the Bank reserves the right to require proof from the depositor as to the nature of the items deposited or to ascertain the contents of the safe deposit.

Every safe deposit must be sealed by the Client. The Client shall be responsible for insuring the assets kept in a sealed safekeeping account. The Bank may only be held liable for loss or damages resulting from gross professional misconduct on its part (which shall be incumbent upon the Client to demonstrate) and only up to the insured value of the asset(s) that is declared to the Bank.

Upon restitution of the deposited assets, the Client shall immediately report any alterations that may have occurred to the seals or the packaging. The Bank shall be released of all liability upon the Client taking possession of the deposit without any objections.

The Bank shall neither manage nor administer the assets held in a sealed safekeeping account.

VIII. PLEDGED ASSETS

Article 27 - Rights of Pledge and Set-off

As security for any and all claims (regardless of their due date or currency) that the Bank may have against the Client, the Bank shall have a general right of pledge and a right of set-off over all the Client's present and future assets and claims (including assets held in sealed safekeeping accounts).

The Bank shall enjoy these rights (even if the nature of its claims against the Client are not the same as the Client's claims vis-à-vis the Bank), whether the Client's assets are credited to or deposited on one or several accounts or whether they are denominated in the same currency or in different currencies.

In the event the Client is in default, the Bank shall be entitled to realise or set-off the pledged assets as it wishes and in the order it deems fit, without having to give prior notice, by way of private contract and with an obligation to abide by the procedures set forth by the Federal Law on Debt Enforcement and Bankruptcy, up to the amount of its claim in principal, interest, fees and all other incidental expenses.

The Bank shall be entitled to act as the counterparty and purchase the Client's assets, whether on the stock exchange or by private contract, on the same terms as would apply to any other purchaser.

9

The rights of pledge and set off shall remain in effect even if the Client account should no longer show a debit balance.

Article 28 – Commitments-to-Assets Ratio

If the ratio of the Client's assets to his commitments vis-à-vis the Bank (whether matured or not or contingent) no longer meets the Bank's criteria, the Bank may require the Client to pledge such additional collateral as it shall deem necessary. If it cannot obtain such collateral within the prescribed timeframe, or if it is unable to contact the Client, the Bank may realise the Client's assets in accordance with the provisions stated in the foregoing article.

## IX.   FEES, COMMISSIONS, INTEREST CHARGES AND EXPENSES

Article 29

The Bank shall debit the Client's account, on the basis of the services agreed, with the amount of all fees, commissions, custody fees, brokerage fees, taxes or other expenses, in particular:

- amounts that are due to it in respect of remuneration for its services, in particular its management fees when it has been conferred with a mandate by the Client;

- charges for custody, brokerage and any other expenses relating to the safekeeping of the Client's assets and the execution of orders by the Bank, its correspondents or any other third parties, whether individuals or legal entities;

- interest charges on debit balances, at the rate fixed by the Bank;

- taxes, duties and withholding charges due to Swiss or foreign authorities.

The Bank shall apply its fee schedule then in effect, which it reserves the right to modify at any time and without notice. The Client declares that he/she is aware of the fees structure in force and expressly agrees to this.

The Client shall be liable for any outstanding fees, commissions, custody fees, brokerage fees, taxes, levies and other charges or expenses, even if the amount thereof is not determined or payment not requested until after the account has been closed.

Article 30 – Remunerations received from third parties

The Client acknowledges that the Bank, in the scope of its contractual relations with the Client, may receive, either directly or indirectly, remunerations, commissions or other non-pecuniary advantages from third parties for services that it provides to them, in particular when it acquires shares in investment funds or other financial instruments on behalf of the Client. The nature, amount and method of calculating these remunerations, commissions or other non-pecuniary advantages may vary over time, depending on the third parties and/or investments and transactions carried out.

The Client expressly agrees that these remunerations, commissions or other non-pecuniary advantages shall form an integral part of the Bank's remuneration and shall retain its own.

Article 31 – Remuneration paid to third parties

The Bank may also pay finder's fees and retrocessions calculated according to the value of the assets held in safekeeping and of the transactions conducted on accounts managed by a third party mandated by the Client, and/or provide non-pecuniary advantages to this third party.

The Client acknowledges that it is incumbent upon him/her to obtain exclusively from this third party any relevant information concerning the nature, amount and method of calculation of these commissions, retrocessions and non-pecuniary advantages.

Article 32 – Conflicts of interest

Within the group of which it forms a part, the Bank may conclude transactions with and receive from or provide services to other group entities in Switzerland and abroad, provided that there is no conflict of interest that may be detrimental to the client.


X. CONFIDENTIALITY

Article 33 – Principles

Banking secrecy encompasses all relationships between the Client and the Bank.

In accordance with applicable law relating to data protection, the Bank shall be authorized, using any appropriate technical means, to record, keep and process the Client's personal data, in particular to ensure that this data complies with the Bank's due diligence obligations.


Article 34 – Restrictions

Banking secrecy may be lifted in cases provided for under Swiss law, in particular in connection with compulsory law proceedings.

The Client acknowledges that full details of his/her identity, date of birth, address and nationality or, where applicable, company name and headquarters, as well as the account number, must be indicated, in particular on international transfer orders.


XI. LEGAL EFFECT OF THE TERMS AND CONDITIONS

Article 35 – Amendments to the General Business Conditions

The Bank reserves the right to amend these General Business Conditions at any time.

Article 36 – Interpretation

The French version of these General Business Conditions and all other contractual agreements shall be deemed the authentic, binding version and shall prevail over any other version in a foreign language.

Should any of the provisions of an agreement between the Bank and the Client be found to be invalid or null and void, the validity of the remaining provisions shall not be affected thereby.


Article 37 – End of the Business Relationship

The Bank may terminate its business relationship with the Client at any time with immediate effect and without being required to provide a reason therefor.

Upon termination of the contractual relationship between the Bank and the Client, all claims owed to the Bank by the Client shall become due and payable, including any deferred or contingent claims.

13

The contractual relationship between the Bank and the Client shall not terminate upon the death of the Client, the loss of his legal capacity or his being adjudicated absent, insolvent or bankrupt. The same shall apply if the Client is placed under administration or guardianship or, in the case of a legal entity, is wound up and liquidated.

Nevertheless, the Bank's claims against the Client shall become immediately due and payable in the event of any one of the aforesaid events, even if the claims in question are deferred or contingent.

### XII. GOVERNING LAW AND JURISDICTION

Article 38 – Governing Law

The relationship between the Bank and the Client shall be governed exclusively by Swiss law.

Article 39 – Place of Jurisdiction

Any dispute concerning the relationship between the Bank and the Client shall be subject to the exclusive jurisdiction of the Courts of Geneva. An appeal to the Federal Supreme Court of Switzerland is reserved.

The place of execution, of jurisdiction, and the place of any debt collection procedures shall be Geneva. The Bank shall nonetheless be entitled to initiate proceedings in the jurisdiction of domicile of the Client or in any other competent jurisdiction.

| Place | St. Lucia | Date (dd/mm/yyyy) | 1 t. / ... / 2010 |
|---|---|---|---|
| | | SIGNATURE(S) OF TRUSTEE | |

PS 2520

A NOV. 2010



## Asset Management Powers Entrusted to a Third Party

Account No.: __0- 5621..__

The undersigned (hereinafter, the "Client") hereby grant(s) these asset management powers, without right of substitution, to:

| Last Name / Company Name | Horizon Global Advisors Ltd |
|---|---|
| First Name(s) | |
| Date of Birth / Incorporation Date (dd/mm/yyyy) | Incorporation Date: March 15, 2006 |
| Nationality(ies) / Head Office | Cumberland House, South Church Street, P.O. Box 1034, Grand Cayman, KY1-1108, Cayman Islands |
| Marital Status Legal structure | Ltd |
| Postal Address | 119 Northern Boulevard, Suite 10 Great Neck, New York 11021 |
| Telephone, Fax | +1 516 626 9100 |
| E-mail | brian@hgadvisors.com |
| List of Signatures | On file with Pictet & Cie |
| | (hereinafter, the "Manager") |

The Manager shall be entitled to manage the assets in the account in the same capacity as the Client. He/It is thus authorized, inter alia, to:

- buy and sell on the stock, money or capital markets all securities in bearer or book entry form (i.e. shares, bonds, notes, money market book claims), currencies and precious metals, on either a cash or forward basis;

- buy and sell shares and units of investment companies and collective investment instruments of any kind, including real estate funds and hedge funds;

- buy and sell derivative or combination instruments involving securities, currencies, precious metals, interest rates or indices (options, futures, short market or company indices, hybrid and structured products, etc.), whether standardized or not;

- make in the name of Pictet & Cie (hereinafter, the "Bank"), but at the sole risk and benefit of the Client, time deposits and fiduciary deposits with any bank, in any currency and in any country;

1

The Manager shall also be authorized to instruct the bank with respect to exercising voting rights at ordinary and/or extraordinary shareholders' meetings.

The Manager shall not be authorized to withdraw any funds or assets from the account under any circumstances. However, the Client hereby expressly authorizes the Manager to charge his/its management fees against the account and to debit the account accordingly.

☒ no*

☐ yes*       If yes, Client Signature: _____

* Tick the box that applies

In the performance of the mandate entrusted to him by the Client, the Manager may use the e-banking services made available to him by the Bank.

The Client accepts that the Manager directs the Bank to place and execute stock orders in the Bank's name, but in accordance with the Manager's instructions and under his/its exclusive responsibility.

The Bank is not party to the contractual relationship between the Client and the Manager. The Client acknowledges that the Bank exercises no control whatsoever over the Manager's investment policy or way of managing the account. Therefore, the Bank may not be held liable for the investments made hereunder.

The Client hereby confirms that he is aware, or has been duly informed by the Manager, of the risks associated with the purchase, sale and holding of transferable securities and financial instruments covered by this management mandate, in particular, but not limited to, the risk of insolvency, the risk of fluctuations in prices and interest rates, and the risks related to exchange rates.

The Client accepts that the Manager may receive finder's fees and retrocessions calculated according to the value of the assets held in safekeeping and the transactions conducted on accounts that the Manager manages with the Bank, as well as receiving other non-pecuniary advantages.

The Client acknowledges that it is incumbent upon him/her to obtain exclusively from the Manager any relevant information concerning the nature, amount and method of calculation of these commissions, retrocession and non-pecuniary advantages.

These powers shall not expire upon the death of the Client, the loss of exercise of his legal rights, or his being adjudicated absent, bankrupt or bankrupt.

The relationship between the Bank and the Client shall be governed exclusively by Swiss law.

Any dispute concerning the relationship between the Bank and the Client shall be subject to the exclusive jurisdiction of the Courts of Geneva. An appeal to the Federal Supreme Court of Switzerland is reserved.

The place of execution, of jurisdiction, and the place of any debt collection procedures shall be Geneva. The Bank shall nonetheless be entitled to initiate proceedings in the jurisdiction of domicile of the Client or in any other competent jurisdiction.

| Place | St. Lucia | Date (dd/mm/yyyy) | 2 / 0 9 / 2 0 1 2 |
|-------|-----------|-------------------|-------------------|
| CLIENT SIGNATURE(S) | | | |




## Instructions for Correspondence

Account no. 0 - 1 _ 62 39 _ 0 00 0

☐ HOLD AT THE BANK FOR 1 YEAR (held in digital format)
By opting to have correspondence held at the bank, I (we) hereby acknowledge that correspondence shall be deemed to have been received by me(us) in accordance with the bank's general business conditions.

X SEND:

- ORIGINAL                                      Language: _English_

|  | monthly | quarterly | annually | other: |
|---|---|---|---|---|
| X Financial statement: | X | ☐ | ☐ | |

  ☒ full valuation statement    X I current account statement
  ☐ profile: _____
  ☐ custom statement as per the form "Changes to the settings of the valuation statement"
X Advices
Address:    Jetly Corp., 11985 Southern Boulevard #200 Royal Palm Beach, Florida 33411, USA

- 1st COPY                                      Language: _____

|  | monthly | quarterly | annually | other: |
|---|---|---|---|---|
| ☐ Financial statement: | ☐ | ☐ | ☐ | |

  ☐ full valuation statement    ☐ current account statement
  ☐ profile: _____
  ☐ custom statement as per the form "Changes to the settings of the valuation statement"
☐ Advices
Address: _____

- 2nd COPY                                      Language: _____

|  | monthly | quarterly | annually | other: |
|---|---|---|---|---|
| ☐ Financial statement: | ☐ | ☐ | ☐ | |

  ☐ full valuation statement    ☐ current account statement
  ☐ profile: _____
  ☐ custom statement as per the form "Changes to the settings of the valuation statement"
☐ Advices
Address: _____

| Place | St. Lucie | Date (dd/mm/yyyy) | 1 2 / 0 8 / 2 0 1 2 |
|---|---|---|---|
| | SIGNATURE(S) | | |
| | | | |

PICTET

Pictet & Cie

Account/securities account number:

C - 6771 14

Category (delete appropriate):

Contracting partner:
Jerry Oaby, AAA Group International Trust

*Jerry Keith Oaby, act co-
Trustee (acting individual?)*

## Declaration for organised associations of individuals, assets or patrimony without specific beneficial owners upon opening a bank account

Pursuant to point 42 of the Agreement on the Swiss banks' Code of Conduct with regard to the exercise of due diligence (CDB 08) the undersigned hereby declare(s) that, as trustee, board member of the foundation or board member of an underlying company belonging to the trust or to the foundation, etc. known as

AAA Group International Trust

and, in such capacity, provide(s), to the best of his/her/their knowledge, the following information to the bank:

1. Information pertaining to the trust, foundation, etc.:

Type of entity (trust, foundation, etc.):
Trust

2. Information pertaining to the settlor(s) (actual, not fiduciary):
Oaby

Last name:
Jerry

First name:
August 16, 1965

Date of birth:
US Person

Nationality:

Address and country of domicile:
11905 Southern Boulevard #200
Royal Palm Beach, Florida 33411 USA



3. Information pertaining to the individual(s) who is/are the first beneficiary(ies) or class/es of beneficiaries (e.g. issue of the settlor) if no specific beneficiary/ies is/are designated.

Last name: _____ Jerry

First name: _____ August 15, 1968

Date of birth: _____ US Person

Nationality: _____

Address and country of domicile: 11985 Southern Boulevard #200
Royal Palm Beach Florida 33411 USA

4. Information pertaining to the settlor(s) and/or third party(ies) disposing of a power of nomination or appointment, provided that such power obliges the representatives (trustees, board members of a foundation, etc.) to dispose of the assets or to change the attribution of the assets or the appointment of beneficiaries:

Last name: _____ Jerry

First name: _____ August 15, 1968

Date of birth: _____ US Person

Nationality: _____

Address and country of domicile: 11985 Southern Boulevard #200
Royal Palm Beach Florida 33411 USA

The undersigned confirm(s) that he/she is/they are entitled to open an account with the bank for the above-mentioned trust, foundation, etc.,

The undersigned hereby undertake(s) to immediately inform the bank of any change to the information contained herein.

Date 11/03/2010                    Signature _____

It is a criminal offence to deliberately provide false information on this form (Art. 251 of the Swiss Penal Code, document forgery under penalty of imprisonment or a fine).

PS 2620
~4 NOV. 2010         Y3 1977
                      24 JAN. 201

 

Proxy for Representation at Shareholders' Meetings
INDEPENDENT ASSET MANAGERS

Account No. : 0 - 60719...

The undersigned (hereinafter, the "Client") hereby authorize(s) Pictet & Cie (hereinafter, the "Bank"), with right of substitution, to exercise the voting rights (or other equivalent rights) inherent in the securities held in above-mentioned account, at ordinary and extraordinary general shareholders' meetings.

The client hereby:

X  expressly decline(s) to be consulted before each shareholders' meeting, unless any extraordinary items of business are scheduled on the agenda.

☐  would like to be consulted before each shareholders' meeting, and authorizes the Bank to debit the additional fees related to this service from his account.

☐  authorizes the asset manager designated by the Asset Management Mandate Entrusted to a Third Party to give specific voting instructions concerning the securities held in the above-mentioned account. The Client authorizes the Bank to debit from his account the additional administrative costs related to this service.

If no box is ticked above, the Client shall be deemed to have declined to be consulted before each shareholders' meeting.

When representing shares at a general shareholders' meeting, the Bank shall vote in favour of the propositions made by the governing bodies of the company, unless otherwise instructed by the Client in due time.

This mandate shall not expire upon the death of the Client, the loss of exercise of his legal rights, or his being adjudicated absent, insolvent or bankrupt.

The relationship between the Bank and the Client shall be governed exclusively by Swiss law.

Any dispute concerning the relationship between the Bank and the Client shall be subject to the exclusive jurisdiction of the Courts of Geneva. An appeal to the Federal Supreme Court of Switzerland is reserved.

The place of execution, of jurisdiction, and the place of any debt collection procedures shall be Geneva. The Bank shall nevertheless be entitled to initiate proceedings in the jurisdiction of domicile of the Client or in any other competent jurisdiction.

| Place | St. Louis | Date (dd/mm/yyyy) | 10 / 28 / 19 0 0 0 |
|-------|-----------|-------------------|---------------------|

SIGNATURE(S)

*Jerry & Oxley*



## Fiduciary Deposit Mandate

Account No. : Q - 607 HP

The undersigned (hereinafter, the "Client") hereby authorizes Pictet & Cie (hereinafter, the "Bank") to make in the Bank's name, but for the account of and at the risks and perils of the Client, fiduciary deposits in any currency with foreign banks.

The bank where the deposit is made and the terms and conditions of the deposit shall be determined by the Bank. In the absence of any instructions from the Client, the Bank shall be at liberty to decide to renew the deposit or not and, if so, the currency, amount and duration of any such renewal of the deposit.

The amount of all fiduciary deposits shall not exceed the amount of the Client's available assets.

The only obligation the Bank shall have vis-à-vis the Client is to transfer to the Client the principal and interest that it receives from the bank located abroad where the deposit is made. In the event the bank located abroad does not honour its obligations, the Bank is only under the obligation to assign to the Client the claim that it has against the bank where the deposit was made.

The Bank shall charge the fees and commissions for each transaction in accordance with the fee schedules in effect.

This agreement may be terminated at any time, but shall remain binding until all outstanding transactions have been concluded and any existing commitments have been honoured. This mandate shall not expire upon the death of the Client, the loss of exercise of his legal rights, or his being adjudicated absent, insolvent or bankrupt.

The relationship between the Bank and the Client shall be governed exclusively by Swiss law.

Any dispute concerning the relationship between the Bank and the Client shall be subject to the exclusive jurisdiction of the Courts of Geneva. An appeal to the Federal Supreme Court of Switzerland is reserved.

The place of execution, of jurisdiction, and the place of any debt collection procedures shall be Geneva. The Bank shall nonetheless be entitled to initiate proceedings in the jurisdiction of domicile of the Client or in any other competent jurisdiction.



| Place | St. Louis | Date (dd/mm/yyyy) | 10 | / | 03 | / | 2010 |
|-------|-----------|-------------------|----|----|----|----|------|

SIGNATURE(S)



"True and exact copy of original"

Date _____

By (initials) : _____

PS 3829

1 NOV 2011



"True and exact copy of original"

Date: _____

By (initials) _____

Q-60289

# W-9

**Form**
(Rev. October 2007)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer Identification Number and Certification

Give form to the requester. Do not send to the IRS.

Name (as shown on your income tax return)
Jerry Ostry, AAA Group International Trust

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Limited liability company.   ☐ Other ▶   Exempt payee ☐

Address (number, street, and apt. or suite no.)
1985 Southern Boulevard # 302

City, state, and ZIP code
Royal Palm Beach Florida 33411

Requester's name and address (optional)

### Part I   Taxpayer Identification Number (TIN)

Social security number

or

Employer identification number
27 3007001

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below).

**Sign Here**  Signature of U.S. person ▶   Date ▶ 7-13-10

## General Instructions

## Purpose of Form

Exhibit 2



"Brian Callahan"
<brc@offshorereporting.co
m>

To  "Marc DUPRAZ" <mdupraz@pictet.com>

cc

bcc

09.11.2010 21:33

Subject  RE: AAA group International Trust

---

Forward ->

**Warning:** this message has been delivered from outside the Pictet Group. If the content is related to banking matters, please apply the same procedure as for an incoming Fax or letter.

**Attention:** Ce message provient de l'extérieur du Groupe Pictet. S'il possède un caractère bancaire, veuillez le traiter de la même manière qu'un Fax ou une lettre entrante.

---

Thanks, Marc.

RE: AAA Group International Trust - account number Q-602719.001

Effective tomorrow (Wednesday), can you please invest $630,000 in the Fiduciary Select Income Fund, LP. The fund is being left open for the November 1" contribution period. So the subscription form should be completed tomorrow and funds transferred tomorrow as well.

Please confirm.

Thanks,
Brian

Destinataire(s)

1. Gérants Indépendants

2.

1 2 NOV. 2010

3. Classement

Q-602719.001

From: Marc DUPRAZ [mailto:mdupraz@pictet.com]
Sent: Tuesday, November 09, 2010 11:41 AM
To: Brian Callahan
Subject: RE: AAA group International Trust

Dear Brian,

Please note that we have received USD 639'975.-- for the above mentioned account.

Best regards

Marc DUPRAZ
Relationship manager
Gérants Indépendants - Genève
tel. +41 58 323 1191

"Brian Callahan" <brc@offshorereporting.com>

09.11.2010 15:10

To: "Marc DUPRAZ" <mdupraz@pictet.com>
cc
Subject: RE: AAA group International Trust

**Warning:** this message has been delivered from outside the Pictet Group. If the content is related to banking matters, please apply the same procedure as for an incoming Fax or letter.

**Attention:** Ce message provient de l'extérieur du Groupe Pictet. S'il possède un caractère bancaire, veuillez le traiter de la même manière qu'un Fax ou une lettre entrante.

Hi Marc

Let me know if you see a wire transfer coming into this account AAA Group International Trust, account number Q-602719.001.

Thanks,
Brian

**From:** Marc DUPRAZ [mailto:mdupraz@pictet.com]
**Sent:** Friday, November 05, 2010 10:50 AM
**To:** Brian Callahan
**Subject:** RE: AAA group International Trust

Hi Brian,

Yes, the approval has been given.

Regards

Marc DUPRAZ
Relationship manager
Gérants Indépendants - Genève
tel. +41 58 323 1191

"Brian Callahan" <brc@offshorereporting.com>

05.11.2010 15:48

To: "Marc DUPRAZ" <mdupraz@pictet.com>
cc
Subject: RE: AAA group International Trust

Warning: this message has been delivered from outside the Pictet Group. **If the content is related to banking matters,** please apply the same procedure as for an incoming Fax or letter.

Attention: Ce message provient de l'extérieur du Groupe Pictet. **S'il possède un caractère bancaire,** veuillez le traiter de la même manière qu'un Fax ou une lettre entrante.

Hi Marc

So that I can advise today for next week, please confirm that the final approval was given for account opening AAA Group International Trust, account number Q-602719 001.

Enjoy your weekend!

Thanks & regards,
Brian

**From:** Marc DUPRAZ [mailto:mdupraz@pictet.com]
**Sent:** Thursday, November 04, 2010 12:38 PM
**To:** Brian Callahan
**Subject:** RE: AAA group International Trust

On monday. If the final approval is given, I will advise.

Best regards

Marc DUPRAZ
Relationship manager
Gérants Indépendants - Genève
tel. +41 58 323 1191

"Brian Callahan" <brc@offshorereporting.com>

AA000044

04.11.2010 17:37

To: "Marc DUPRAZ" <mdupraz@pictet.com>

cc

Subject: RE: AAA group International Trust

**Warning:** this message has been delivered from outside the Pictet Group. **If the content is related to banking matters,** please apply the same procedure as for an incoming Fax or letter.

**Attention:** Ce message provient de l'extérieur du Groupe Pictet. S'il possède un **caractère bancaire,** veuillez le traiter de la même manière qu'un Fax ou une lettre entrante.

Thanks, Marc.

I will begin working on the documents per your email below.

Will it be ok to fund the account tomorrow or Monday?

Brian

**From:** Marc DUPRAZ [mailto:mdupraz@pictet.com]
**Sent:** Thursday, November 04, 2010 12:33 PM
**To:** Brian Callahan
**Subject:** AAA group International Trust

Dear Brian,

The account will be introduced to the partners tomorrow. However, if the account is open by two entities therefore we require to receive the following documents in order to complete the file:

  * Status

AA000045

- certificate of good standing
- certificate of incumbency
- A new form T mentioning the co-trustees as co-contracting partners

On the other hand, in order to avoid to send back all the forms to be signed by Thames Trust we could accept a letter from Thames Trust allowing Mr. Os.... to represent them.

The account number is Q-602719.001

Best regards

Marc DUPRAZ
Relationship manager
Gérants Indépendants - Genève
tel. +41 58 323 1191

```
Pictet & Cie, Banquiers          Tel. +41 (0)58 323 2323
60, route des Acacias            Fax  +41 (0)58 323 2324
CH-1211 GENEVE 73                http://www.pictet.com/
```

This document should only be read by those persons to whom it is addressed and is not intended to be relied upon by any person without subsequent written confirmation of its contents. If you have received this e-mail message in error, please destroy it and delete it from your computer.
Any form of reproduction, dissemination, copying, disclosure, modification, distribution and/or publication of this E-mail message is strictly prohibited.

```
Pictet & Cie, Banquiers          Tel. +41 (0)58 323 2323
60, route des Acacias            Fax  +41 (0)58 323 2324
CH-1211 GENEVE 73                http://www.pictet.com/
```

This document should only be read by those persons to whom it is addressed and is not intended to be relied upon by any person without subsequent written confirmation of its contents. If you have received this e-mail message in error, please destroy it and delete it from your computer.
Any form of reproduction, dissemination, copying, disclosure, modification, distribution and/or publication of this E-mail message is strictly prohibited.

```
Pictet & Cie, Banquiers          Tel. +41 (0)58 323 2323
60, route des Acacias            Fax  +41 (0)58 323 2324
```

AA000046

CH-1211 GENEVE 73                              http://www.pictet.com/

This document should only be read by those persons to whom it is addressed and is not intended to be relied upon by any person without subsequent written confirmation of its contents. If you have received this e-mail message in error, please destroy it and delete it from your computer.
Any form of reproduction, dissemination, copying, disclosure, modification, distribution and/or publication of this E-mail message is strictly prohibited.

Pictet & Cie, Banquiers                   Tel. +41 (0)58 323 2323
60, route des Acacias                     Fax  +41 (0)58 323 2324
CH-1211 GENEVE 73                         http://www.pictet.com/

This document should only be read by those persons to whom it is addressed and is not intended to be relied upon by any person without subsequent written confirmation of its contents. If you have received this e-mail message in error, please destroy it and delete it from your computer.
Any form of reproduction, dissemination, copying, disclosure, modification, distribution and/or publication of this E-mail message is strictly prohibited.