UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81088-CIV-MARRA/MATTHEWMAN

| | |
|---|---|
| PICTET OVERSEAS INC., PHILIPPE BERTHERAT, REMY ANTOINE BEST, RENAUD FERNAND DE PLANTA, JACQUES JOSEPH DE SAUSSURE, BERTRAND FRANCOIS LAMBERT DEMOLE, JEAN-FRANCOIS DEMOLE, MARC PHILIPPE PICTET, and NICOLAS LUCIEN PICTET, <br><br> Plaintiffs, <br><br> v. <br><br> HELVETIA TRUST and AAA GROUP INTERNATIONAL TRUST, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

Plaintiffs, Pictet Overseas Inc. ("Pictet Overseas"), Philippe Bertherat, Remy Antoine Best, Renaud Fernand De Planta, Jacques Joseph De Saussure, Bertrand Francois Lambert Demole, Jean-Francois Demole, Marc Philippe Pictet, and Nicolas Lucien Pictet (together with other individual plaintiffs, the "Individual Plaintiffs") (collectively, "Plaintiffs"), respectfully submit this Reply in further support of their Motion for Permanent Injunction (ECF No. 135).

**PRELIMINARY STATEMENT**

Defendants' Response to Plaintiffs' Motion for Permanent Injunction (ECF No. 140) (the "Opposition" or "Opp.")[1] relies on two arguments: (1) the Individual Plaintiffs have failed to offer any proof in support of the permanent injunction application, and (2) *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364 (11th Cir. 2004) ("*King*") requires this Court to deny the application. Defendants are wrong.

First, Plaintiffs have submitted substantial documentary evidence and sworn declarations that demonstrate that Defendants opened and maintained custodial bank accounts with non-party Swiss bank Pictet & Cie, *not* Pictet Overseas and *not* the Individual Plaintiffs. For example:

- Defendants' account-opening documentation with Pictet & Cie, (ECF Nos. 3-3, 3-4, 3-5) showing that the Defendants' bank accounts were opened with Pictet & Cie, with asset management powers entrusted to a third party (Horizon and Callahan). This documentation also shows that Defendants agreed that their banking relationship was governed by Swiss law and that the courts of Geneva would be the exclusive forum for disputes concerning that relationship.

- Account statements for Defendants' accounts, sent from Pictet & Cie to Defendants. (ECF No. 3-7).

- Correspondence regarding the accounts exchanged between Pictet & Cie employees (on Pictet & Cie letterhead and from Pictet & Cie email addresses) and the Defendants' trustees. (ECF No. 3-8).

- October 23, 2013 Declaration of Déodat Lê (ECF No. 3-1) at ¶12, stating, among other things, that "[f]rom the face of the documents that the Defendants attached to their Amended Statement of Claim . . . there can be no doubt that they opened a banking relationship at Pictet & Cie."

- June 19, 2014 Declaration of Stephane Tourette (ECF No. 81-2) at ¶21 stating, among other things, that "defendants in this Action both have produced in a related FINRA action documents showing that they have Custody Accounts with the Bank."

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in Plaintiffs' Motion for Permanent Injunction (ECF No. 135) ("Permanent Injunction Motion").

This evidence is unequivocal and unrebutted. Defendants opened accounts, and were thus customers of Pictet & Cie and not the Individual Plaintiffs.

In the face of this evidence, Defendants assert the defense that the Court should simply disregard the existence of Pictet & Cie—one of the largest and most prominent private banks in Switzerland—and find that Defendants actually opened banking accounts and received custodial banking services not from the Bank, but from eight Swiss individuals. Defendants present no evidence to support this absurd proposition. Indeed, all evidence in the record shows just the opposite. *See, e.g.,* Tourette Decl. (ECF No. 81-2) at ¶ 13 (Pictet & Cie is an "independent, separate juridical entity. It has its own management team, it maintains its own books and records, it is subject to its own regulatory regime, it has its own independent capitalization and it sets its own policies and goals."). Defendants have utterly failed to substantiate their defense and it should be rejected.

As for *King*, the Court already has examined the case and found it to be inapposite. *See* Matthewman Report at 12-13 (finding *King* "distinguishable" and "inapposite").

Defendants are not Plaintiffs' "customers" so they cannot pursue claims against Plaintiffs in FINRA arbitration. A permanent injunction should issue.

## ARGUMENT

### I.      Defendants Were Customers of Pictet & Cie, Not the Individual Plaintiffs

#### A.      Defendants Fail to Sustain their Alter Ego Theory

Defendants' primary defense on this application is to the effect that even though they held bank accounts at Pictet & Cie, the Swiss bank in fact "is not an entity" (Opp. at 6), is a "corporate façade" (Opp. at n. 2), is "one and the same" as the Individual Plaintiffs (ECF No.

3

136 at 12) and is an "alter ego" of the Individual Plaintiffs and/or Pictet Overseas (Statement of Claim, ECF No. 3-2 at 8).[2]

On their alter ego theory, Defendants bear the burden of proof. *Eckhardt v. U.S.*, 463 Fed. App'x 852, 856 (11th Cir. 2012) ("as the party asserting the alter ego theory, [Defendants] bear the burden of proof"); *see also In re Hillsborough Holdings Corp.*, 176 B.R. 223, 245 (M.D. Fla. 1994) (recognizing defendants' burden of proof when asserting veil-piercing theory). They have failed to meet that burden. In fact, Defendants have not even attempted to articulate, much less establish the contours of alter ego or vicarious liability in the context of a Swiss limited partnership.[3] Defendants simply make conclusory, unsupported statements like "under the law, the Plaintiff Partners are one and the same as Pictet & Cie since they are the General Partners of Pictet & Cie." (ECF No. 136 at 12) (<u>no</u> citation provided). Magistrate Judge Matthewman rejected Defendants' conclusion in no uncertain terms when he stated: "Defendants' claim that the business activities of Pictet & Cie are the business activities of the eight partners just because the partners stand personally liable for Pictet & Cie is fallacious. . . ." (Matthewman Report at 14). And on this application, Defendants offer no new evidence whatsoever to suggest the Court should depart from its prior ruling.

---

[2] Defendants' alter ego theory has been hard to pin down in this litigation. At times, Defendants have argued that Pictet Overseas is an alter ego of the Individual Plaintiffs and of Pictet & Cie. (ECF No. 23 at 3). Elsewhere, Defendants have argued that Pictet & Cie should be disregarded altogether. *See, e.g.*, Opp. at 2. What has been consistent, however, is Defendants' failure to present any legal support for their conclusion that any of these entities should be ignored.

[3] Defendants don't even seem to recognize that Pictet & Cie was a limited partnership under Swiss Law; their generic statements about U.S. general partnership law (*see, e.g.,* Defendants' Summary Judgment Motion, ECF No. 136, at 12) (including Defendants' erroneous statement that "Pictet & Cie was established as a general partnership" and citing cases discussing partner liability in U.S. general partnerships) are utterly irrelevant. *See* Tourette Decl. at ¶ 6 ("Until January 2014, the Bank's legal structure was a limited partnership under Swiss law, registered in Geneva.").

4

In fact, although it is not their burden, Plaintiffs offer unrebutted evidence demonstrating that Pictet & Cie is a private bank in Switzerland, that it holds a banking license, has its own management team, maintains its own books and records, is independently capitalized, is regulated by FINMA, has an independent outside auditor, and adheres to its own filing requirements. Tourette Decl. at ¶¶ 10-14. Defendants' bare statement that Pictet & Cie is "one and the same" as the Individual Plaintiffs is, to put it mildly, legally insufficient. Defendants' alter ego theory is without merit.

> B. The Evidence Shows that Defendants Were Customers of Pictet & Cie, Not the Individual Plaintiffs

Defendants also assert that Plaintiffs have submitted no evidence on the issues of whether they were customers of the Individual Plaintiffs and whether the dispute arises out of the Individual Plaintiffs' business activities. Opp. at 4. This too is false. Plaintiffs have submitted account opening documentation showing that Defendants applied for and opened accounts with Pictet & Cie. *See* Exs. B and C to Lê Decl. (ECF Nos. 3-3, 3-4, 3-5). The documentation refers principally to two parties: the "Client" (the Defendant trusts) and the "Bank" (defined as Pictet & Cie); it goes without saying that there is no reference to the Individual Plaintiffs. (*See, e.g.*, ECF No. 3-3 at 2). These account opening documents also contain choice of law and forum-selection provisions, directing that any disputes concerning the relationship between the Bank and Client be adjudicated in Switzerland according to Swiss law. (*See, e.g., id.* at 10).[4]

---

[4] That provision reads as follows: "The relationship between the Bank and the Client shall be governed exclusively by Swiss law. Any dispute concerning the relationship between the Bank and the Client shall be subject to the exclusive jurisdiction of the court of Geneva. An appeal to the Federal Supreme Court of Switzerland is reserved. The place of execution, of jurisdiction, and the place of any debt collection procedures shall be Geneva. The Bank shall nonetheless be entitled to initiate proceedings in the jurisdiction of domicile of the Client or any other competent jurisdiction."

Plaintiffs also presented account statements (ECF No. 3-7) and letter and email correspondence (ECF No. 3-8) showing that Pictet & Cie provided custodial banking services to Defendants. Plaintiffs likewise presented sworn testimony reflecting the fact that Defendants opened accounts with Pictet & Cie and not FINRA member Pictet Overseas. *See* Lê Decl. (ECF No. 3-1) and Tourette Decl. (ECF No. 81-2). The evidence is overwhelming and unequivocal that Defendants' bank accounts—from which they allege that Callahan defrauded them—were held at Pictet & Cie.[5] Defendants opened accounts and purchased services from Pictet & Cie, not from any of the Plaintiffs.[6] Defendants obviously were Pictet & Cie customers.

Defendants attempt to challenge this conclusion by arguing that the Individual Plaintiffs personally "approved" the opening of their accounts with Pictet & Cie (Opp. at 5), offering only a vague email chain to support this proposition. Defendants' Statement of Material Facts (ECF No. 136 at 6). But that email chain already was presented to the Court at the preliminary injunction stage (ECF No. 35-6) and Magistrate Judge Matthewman rejected the notion that any such "approval" makes Defendants "customers" of the Individual Plaintiffs. (Matthewman Report at 11-14). Indeed, Defendants admit, as they must, that they have never had any contact at all with the Individual Plaintiffs. (November 18, 2013 Evidentiary Hearing Transcript (ECF No. 31) at 40:12-19, where Defendants' counsel concedes that neither of his clients had any

---

[5] Defendants criticize the Individual Plaintiffs for failing to submit "any declaration, deposition, or other matter of testimonial nature [*sic*] in this case." Opp. at 2. This is irrelevant; the Individual Plaintiffs need not rely on testimonial evidence to establish that Defendants are not their customers.

[6] Defendants contend that, in terms of evidence, "all [Plaintiffs] have submitted is argument of counsel." Opp. at 4. As demonstrated above, that is false. To the extent that Defendants argue that the Lê and Tourette Declarations should be disregarded because they are lawyers, such an argument is unsupportable. *See Tardiff v. Geico Indem. Co.*, 481 Fed. App'x 584, 587 (11th Cir. 2012) (district court properly allowed attorney testimony where the lawyer testified as a fact witness and based upon experience and personal knowledge).

contact with the Individual Plaintiffs; *see also* Deposition of Jerry K. Ostry (ECF No. 27-1) 88:18-91:11).

Finally, Defendants assert that the Individual Plaintiffs purposefully evaded discovery in this case by relying on "some claimed privilege" under Swiss law.  This is yet another false statement.  The Individual Plaintiffs complied fully with their discovery obligations and at no time evaded discovery by relying on Swiss law or otherwise; the Individual Plaintiffs produced all responsive documents within their possession, custody or control and did not withhold any materials on the basis of Swiss law. *See* ECF No. 96 at 6 ("In conclusion, consistent with the September 8 Order, Plaintiffs have searched for and produced all responsive documents in their custody and control, and Swiss law does not preclude the production of any of these materials.").

So when Defendants say the Individual Plaintiffs refused to engage in discovery, they apparently are referring to their own misguided efforts to require the Individual Plaintiffs to deliver up bank materials relating to the Defendants' Pictet & Cie bank Accounts.  The Court determined that the Individual Plaintiffs do not have possession, custody or control of Pictet & Cie's documents and therefore did not have the ability to produce these materials.[7] (ECF No. 91 at 14-15, aff'd at ECF No. 99).

---

[7] Indeed, Judge Matthewman held:  "The Court disagrees with Defendants' interpretation of the evidence and finds that the declaration provided by Plaintiffs from a Vice President is more persuasive than Defendants' mere conjecture.  The individual Plaintiffs-partners do not have possession, custody, or control of Pictet & Cie's documents despite the broad interpretation of those terms in the relevant case law.  Based upon the record evidence, the Court finds that the eight individual Plaintiffs-partners do not have the authority or ability to order Pictet & Cie to produce the requested documents.  Moreover, the Court finds that, based upon the record evidence, the change in structure of Pictet & Cie from a Swiss limited partnership to a Swiss corporation was not done to hinder discovery in this case, was underway well before this case was filed, and was simply a business organizational change done in good faith and for legitimate business reasons. There is also no merit to the Defendants' argument that the individual Plaintiffs-partners are utilizing their ownership and management of "Pictet" as both a sword and a shield."  (ECF No. 91 at 14-15.)

**II.  *King* is Inapposite**

Defendants claim that *King* compels this Court to find that they are "customers" of the Individual Plaintiffs under FINRA Rules. Opp. at 6-7. They further criticize Plaintiffs for failing to discuss *King* in the Permanent Injunction Motion. *Id*. In fact, Plaintiffs have discussed *King* extensively in prior briefing in this case and have demonstrated that it is of no help to the Defendants. *See* Pictet Opposition to Defendants Summary Judgment Motion (ECF No. 141 at 11-13 ("*King* is Inapposite")); *see also*, *e.g.*, ECF Nos. 3 at n.5, 26 at 9, 38 at 5, and 81 at n.35. Indeed Magistrate Judge Matthewman conducted his own analysis and deemed the case "distinguishable" and "inapposite." Matthewman Report at 12-13.

In *King*, it was undisputed that a registered representative of a FINRA member had actually provided investment advice (and sold unregistered securities) to the defendant. 386 F.3d at 1365. The *King* court held that, even though the defendant dealt with the FINRA member's representative and not with the FINRA member itself, the FINRA member could be compelled to arbitrate. *Id.* at 1371. Here, Defendants were allegedly defrauded by Callahan, who was not a representative of Pictet Overseas, Pictet & Cie *or* the Individual Plaintiffs. And none of the Plaintiffs provided investment advice or sold securities to Defendants. Moreover, to the extent that Defendants urge the Court that FINRA "customers" include any non-broker or non-dealer, such a reading of the FINRA Rules would have absurd consequences and has been rejected by this and other courts. *See* Matthewman Report at 14 ("such a conclusion would lead to an absurd result").

As we have explained already in connection with this application, the "customer" question is resolved decisively in Plaintiff's favor by virtue of prevailing case law.[8]  *See* Permanent Injunction Motion at 7-12.  *King* adds nothing and it certainly does not somehow transform Defendants into "customers" of the Individual Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, this Court should issue a permanent injunction barring Defendants from prosecuting their claims against Plaintiffs through FINRA arbitration. Plaintiffs respectfully request the Court to issue an order that:  (1) permanently enjoins Defendants from proceeding with their claims in the Arbitration; and (2) grants Plaintiffs any further relief the Court deems just and proper.

---

[8] *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993) (FINRA Rule 12200, which must be read so as not to "upset the reasonable expectations of [FINRA] members"); *Citigroup Global Markets Inc. v. Abbar*, 761 F.3d 268, 275 (2d Cir. 2014) ("[A] "customer" under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member); *UBS Fin. Servs. Inc. v. Carilion Clinic*, 706 F.3d 319, 325 (4th Cir. 2013) ("customer" is ""one, not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are covered by FINRA's regulation, namely the activities of investment banking and the securities business.").

Dated:  September 23, 2015

Respectfully Submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

By:   /s/  *Mark A. Salky*
MARK A. SALKY
Florida Bar No. 58221
Email:  salkym@gtlaw.com
IAN M. ROSS
Florida Bar No. 91214
Email:  rossi@gtlaw.com

**GREENBERG TRAURIG, LLP**
Terry R. Weiss
Florida Bar No. 57906
Email:  weisstr@gtlaw.com
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  (678) 553-2100
Facsimile:  (678) 553-2212

**GREENBERG TRAURIG, P.A.**
Jennifer L. Tomsen
Florida Bar No. 630871
Email:  tomsenj@gtlaw.com
1000 Louisiana Street Suite 1700
Houston, TX 77002
Telephone:  (713) 374-3500
Facsimile:  (713) 374-3505

**MAYER BROWN LLP**
Mark G. Hanchet (Admitted Pro Hac Vice)
Robert W. Hamburg (Admitted Pro Hac Vice)
1221 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email:  mhanchet@mayerbrown.com
Email:  rhamburg@mayerbrown.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2015, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on the parties listed in the service list below, either via transmission of Notices of Electronic Filing generated by CM/ECF or via overnight mail for those parties who are not authorized to receive electronically Notices of Electronic Filing:

By:   /s/ Mark A. Salky
Mark A. Salky

## SERVICE LIST

Curtis David Carlson, Esq.
**CARLSON & LEWITTES PA**
One Southeast Third Avenue
Suite 1200
Miami, FL  33131
Tel:  (305) 372-9700
Fax:  (305) 372-8265
Email:  carlson@carlson-law.net

*Counsel for Defendants*