UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:13-CV-81088-MARRA/MATTHEWMAN

PICTET OVERSEAS, INC., et. al.,

    Plaintiffs,

vs.

HELVETIA TRUST and AAA
GROUP INTERNATIONAL TRUST,

    Defendants.

_____/

# DEFENDANTS' MOTION TO EXCLUDE
# EXPERT TESTIMONY OF MARC MENCHEL

Defendants, Helvetia Trust and AAA Group International Trust (collectively, the "Defendants"), by undersigned counsel, move for an Order, pursuant to Federal Rules of Evidence 702, precluding the opinion testimony at trial of Plaintiffs' expert witness, Marc Menchel, and show the following:

*1.*    *Introduction.*

Plaintiffs served an Expert Report from attorney Marc Menchel on August 16, 2016 (the "Report"). D.E.161. As the Report makes clear, Mr. Menchel prepared this report at the request of counsel for Plaintiffs. *Id*. at 1. According to the Report, Mr. Menchel was asked to opine on the following topics:

> (A) Whether FINRA has jurisdiction over individuals whose securities and banking activities relate exclusively to non-FINRA members;
>
> (B) Whether FINRA Rule 12200 was intended to implicate disputes involving indirect owners of a FINRA member that are unrelated the securities business of the member;

>(C) Whether a FINRA member's disclosure of an individual as for the purposes of SEC Form BD affects their status as an "Associated Person" under FINRA Rule 12200;
>
>(D) Whether a 12.5% ownership interest in the parent company of a FINRA member is sufficient to confer "Associated Person" status under FINRA Rule 12200; and
>
>(E) Whether there is any manner in which the Individual Plaintiffs can be considered "Associated Persons" of Pictet Overseas within the meaning of FINRA Rule 12200.

*Id*. at 1-2.

All of Mr. Menchel's opinions are simply constructions of, or turn on construction of FINRA Rules 12100(r) and 12200, which are part of the FINRA Code of Arbitration Procedure for Customer Disputes.  Rule 12200 provides that a dispute must be arbitrated when it is between an "associated person of a member" and his customer and is in connection with the business activities of the associated person.  FINRA Rule 12200.  The term "associated person of a member" is defined in Rule 12100(r) to include:

>[A] sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

FINRA Rule 12100(r).

Mr. Menchel bases his opinions solely on his experience as the former General Counsel for Regulation at FINRA. *Id*. at 2, f.n. 2 (the "Regulation Group").  Mr. Menchel states in his Report that he was the senior-most legal officer at FINRA in charge of promulgating FINRA Rules, *id.* at 2, but notably he never states or mentions that he gained experience while at FINRA

from any involvement with the promulgation of any FINRA arbitration rule, with providing guidance as to any FINRA arbitration rule, or with amending or interpreting FINRA Rules 12100(r) or 12200.

Prior to working in FINRA's Regulation Group, Mr. Menchel held senior legal and compliance positions at several securities firms. *Id*.  Mr. Menchel does not state or mention in his Report that he gained any experience while in any of those positions with the promulgation of any FINRA arbitration rule, with asking for or receiving any guidance from FINRA as to any arbitration rule, or with amending or interpreting Rules 12100(r) or 12200.

The structure of FINRA Rules is important to consider in relation to Mr. Menchel's duties in the Regulation Group at FINRA.  The FINRA Rules are separated into three main groups: (1) the regulation of firms, salespeople, and markets in Series 100 through 7000 of the rules, which is known as Regulation; (2) discipline of members and associated persons in Series 8000 and 9000, which is known as Enforcement; and (3) arbitration and mediation of customer and industry disputes in Series 10000 through 14000, which is known as Dispute Resolution.  The last group of rules is administered by the Dispute Resolution group of FINRA and is headed by the Director of Dispute Resolution.[1]  The rules that Mr. Menchel interprets in his Report are found in Series 12000 of the FINRA Rules, which pertains to arbitration of customer disputes, yet Mr. Menchel's only experience was in Regulation.

When Mr. Menchel was employed at FINRA, he was General Counsel for the Regulatory Group, which "is charged with determining FINRA regulatory policy both in conjunction with and independently from the operating divisions of FINRA." Report at Ex. A, at 1.  Although Mr. Menchel claims to be "deeply familiar with the purpose, scope and practical application of

FINRA Rules," Report at 3, he does not disclose a single Series 12000 Rule that he had any involvement in promulgating, litigating, amending, interpreting, or giving or receiving guidance about.  In short, Mr. Menchel's Report discloses no basis to conclude that he has any experience in promulgating, litigating, amending, interpreting, or giving or receiving guidance on any of FINRA's Dispute Resolution or arbitration rules, including Rule 12100(r) or 12200.[2]

The Report essentially admits by omission that Mr. Menchel lacks experience with the arbitration rules or with Rule 12100(r).  The Report states:

> As FINRA General Counsel, I was the senior-most legal officer in charge of promulgating FINRA Rules. Specifically, I helped develop FINRA Rule amendments across a broad topical spectrum including the areas of supervisory control, CEO certification of compliance processes, debt mark-up, quality of market rules for the unlisted OTC market, transparency and dissemination protocols for debt instruments, new securities issuance, variable annuity sales, business continuity planning, limit and market order protection rules; securities analyst conflicts rules; leadership participation in various FINRA task forces on mutual funds breakpoints and account transfer issues; policy statements on best execution in bonds, obligations attached to the sale of non-conventional instruments, retail participation in hedge funds, investment issues pertaining to the sale of structured and new products.

Report at 3.  All of this "broad topical spectrum" falls under Regulation, the only division in which Mr. Menchel apparently served.  Mr. Menchel does not mention the word "arbitration" in his description nor does he claim to have developed any rule amendments relating to the Series 12000 of rules.

Nonetheless, in his Report, Menchel provides the following *legal* opinions:

> (A) FINRA has jurisdiction only over its members and the "Associated Persons" of those members, the basis for FINRA

---

[1]  *See* http://www.finra.org/about/finra-executives (last visited Oct. 3, 2016).
[2]  Indeed, he cannot claim that he possesses such experience because FINRA Rule 12200(r) has never been amended except to make it conform to minor wording differences found in the FINRA By-Laws.  *See* 74 Fed. Reg. 56,679, 56,680 (Nov. 2, 2009).

jurisdiction over "Associated Persons" is their relationship to a FINRA member, and FINRA does not have jurisdiction over individuals whose banking or securities activities relate exclusively to a non-FINRA member;

(B) FINRA Rule 12200 was not intended to implicate disputes relating to indirect owners of a FINRA member not arising from the securities business of the FINRA member, nor does FINRA interpret the rule in such a manner;

(C) a FINRA member's disclosures for the purposes of SEC compliance have no bearing on the "Associated Person" status of its indirect owners;

(D) a 12.5% ownership interest in the parent company of a FINRA member is plainly insufficient to presume "control" under FINRA Rule 12200; and

(E) It is my opinion that the Individual Plaintiffs are not "Associated Persons" of Pictet Overseas within the meaning of FINRA Rule 12200.

*Id*. at p.2.

2.   *Summary of Argument*

Before permitting expert testimony, a court must determine (1) whether the expert is *qualified* to testify on the matters on which he intends to testify, (2) whether the expert testimony may be properly and *reliably* applied to the facts in issue is, and (3) whether the expert testimony pertains to a fact in issue and will be *helpful* to the trier of fact. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)(*Daubert* gatekeeping function for scientific testimony applies to all expert testimony); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)(gatekeeping function required for scientific testimony to ensure reliability); *United States v. Frazier*, 387 F.3d 1244, 1259-60 (11th Cir. 2004)(reliability standards for expert testimony based on experience).  The burden of showing that an expert witness is qualified, and that the

expert testimony is reliability and helpful, rests with the proponent of the testimony. *Frazier*, 387 F.3d at 1260.

In performing the gatekeeping function in this case, the Court should exclude Mr. Menchel's expert testimony for several reasons. *First*, Mr. Menchel is not qualified to testify competently regarding the matters he intends to address. Mr. Menchel lacks any experience with Rules 12100(r) and 12200. Mr. Menchel may be knowledgeable about FINRA's Regulation rules, but he is not knowledgeable about FINRA's Dispute Resolution rules.

*Second*, if an expert witness is relying solely or primarily on experience, as Mr. Menchel does, in order to insure the testimony is reliable, "the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)(en banc)(quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.)). Mr. Menchel has failed to show in his Report (1) how his experience leads to the conclusion reached, (2) why that experience is a sufficient basis for the opinion, and (3) how that experience is reliably applied to the facts. Mr. Menchel does not meet the standards in *Frazier* and Fed.R.Evid. 702 and, therefore, must be precluded from proffering his *legal* opinions in the Report or at trial.

*Third*, all of Mr. Menchel's opinions are legal conclusions, which are undeniably for the court to decide and are, therefore, inappropriate opinions for an expert to render. It is well-settled law that an expert witness cannot give an opinion on an ultimate issue of law. *U.S. v. Boulware*, 558 F.3d 971, 975 (9th Cir.2009) ("The trial court's exclusion of the expert testimony to the extent that it constituted legal opinion was well within its discretion."); *Konikov v. Orange County, Fla.*, 290 F.Supp.2d 1315, 1318 (M.D.Fla. 2003)(the judge, not an expert, decides the law); *Brevard*

*Emergency Servs. v. EmCare, Inc.*, 2006 WL 2425423, *6 (M.D.Fla. 2006)("In the Eleventh Circuit . . . the judge is the only source of law.")

3. Argument

    a. Mr. Menchel is Not Qualified to Offer Opinions on the FINRA Arbitration Rules

As an initial matter, the proponent of the expert must show by a preponderance of the evidence that "the expert is qualified to testify competently regarding the matters he intends to address." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

Mr. Menchel's opinions are based solely on his experience. Report at 4. While Mr. Menchel may be knowledgeable about FINRA's rules dealing with Regulation, he has listed no experience with the FINRA Dispute Resolution rules, specifically the 12000 Series of rules, which is known as the FINRA Code of Arbitration Procedure for Customer Disputes. As suggested by the names of the sections, Regulation and Dispute Resolution have nothing to do with each other. The Report fails to demonstrate any evidence–let alone a preponderance–that Mr. Menchel is qualified to testify competently regarding the FINRA arbitration code he intends to address and, therefore, he must not be permitted to testify. *Rink*, 400 F.3d 1286, 1291–92 (11th Cir.2005).

    b. Mr. Menchel does not meet the *Daubert* and *Frazier* tests

With regard to the second prong of the *Daubert* gatekeeping function -- whether expert testimony may be reliably applied to the facts in issue – the Advisory Committee Notes to Federal Rule of Evidence 702 read:

> If an expert witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

> experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'

Fed.R.Evid. 702 Advisory Committee Note (2000 amends.), quoted in *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Circuit 2004.

In *Frazier*, a criminal defendant in a kidnapping and rape case sought to introduce expert testimony regarding the significance of the fact that no hairs or semen from the defendant had been discovered during the investigation. *United States v. Frazier*, 387 F.3d 1244, 1253-54 (11th Cir. 2004)(en banc). The trial court found that while the proffered expert, who was relying primarily on his experience, was qualified as an expert in investigating crime scenes involving sexual assaults, he would not be permitted to offer the opinions that (1) hairs or fluids would be expected based on the sexual acts the victim described; and (2) the forensic evidence did not substantiate the claim of rape. *Id*. at 1254.

The trial court conducted a *Daubert* hearing where the court questioned the expert regarding the bases for his proffered opinions. *Id*. at 1264. In holding that the trial court did not abuse its discretion in excluding the expert testimony, the 11th Circuit, sitting *en banc*, held that the expert "offered precious little in the way of a reliable foundation or basis for his opinion" and "never explained how his own experience, or the texts he mentioned, supported his [] opinion." *Id.* at 1265.

Likewise, in this case, Mr. Menchel is relying solely on his experience. Yet he has failed to even attempt to explain how or why his experience at FINRA, which was entirely in the area of Regulation, can provide the basis for his proffered opinions on rules involving arbitration, which are in an entirely separate area of FINRA. In order to be reliable, Mr. Menchel's opinions would need to be tied to specific experience he has had. *Id.* at 1265. Plaintiffs cannot meet their burden

to "explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for that opinion, and just how that experience was reliably applied to the facts of the case." *Id.* at 1265.

Even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his expert opinion must be sufficiently reliable under *Daubert* and its progeny. *See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir.2003) ("one may be considered an expert but still offer unreliable testimony"). The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Id.* (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.)). Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590). An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique.").

Under *Frazier* and Rule 702, Mr. Menchel must show *how* his experience leads to the conclusions reached. *Frazier*, 387 F.3d at 1261. Mr. Menchel does not even attempt this. He merely gives his employment background and his opinions. Mr. Menchel does not describe any experience relating to the jurisdiction of FINRA arbitration or FINRA Rule 12200. Accordingly, *Frazier* requires Mr. Menchel's expert testimony to be excluded.

*Frazier* and Rule 702 also require Mr. Menchel to show *why* his experience is a sufficient basis for the opinion. *Frazier*, 387 F.3d at 1261. Again, Mr. Menchel does not even attempt to show why his experience is a sufficient basis for the opinion. Mr. Menchel merely gives his employment background and his opinions. Mr. Menchel fails to explain how his experience relates to the specific issues of this case, other than to broadly state that he has been involved in FINRA rulemaking, albeit in the Regulation Group. Again, under *Frazier*, Mr. Menchel's expert testimony should be excluded.

Finally, under *Frazier* and Rule 702, Mr. Menchel must show how his experience is reliably applied to the facts. *Frazier*, 387 F.3d at 1261. However, Mr. Menchel makes no attempt to show how his experience is reliably applied to the facts to reach his opinions. Mr. Menchel's Report is devoid of any information that would give the reader cause to rely on it. Indeed, the experience Mr. Menchel listed in the Report suggests his experience cannot be reliably applied to the facts because although he includes a long list of experience, none of it pertains to Dispute Resolution. Without showing how Mr. Menchel's experience is reliably applied to the facts, his Report and testimony must be excluded. *Frazier*, 387 F.3d at 1261; *Witt v. Stryker Corp.*, 648 Fed. Appx. 867, 873-74 (11th Cir. 2016)(terse, conclusory expert opinion excluded as unreliable because no basis provided).

  c. All of Mr. Menchel's Opinions are Inadmissible
    Legal Opinions that are not Helpful to the Trier of Fact

The last part of the court's gatekeeping function is to determine whether "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir 1998), citing *Daubert*, 509 U.S. at 589. Mr. Menchel intends to

offer opinions solely on the law, specifically on how to interpret the FINRA Code of Arbitration Procedure.

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702 (emphasis added). The plain language of Rule 702 and the 11th Circuit case law makes clear that expert testimony on matters of law are not permitted. Mr. Menchel's opinions pertain to the ultimate issues of law in this case and which this Court is qualified to decide and must decide on its own with the

*In Brevard Emergency Servs v. EmCare, Inc.*, 2006 WL 2425423 (M.D.Fla. 2006), a group of physicians entered an agreement with a company that provides management and administrative services to healthcare professionals. *Id.* at *1. One of the functions EmCare was to provide to the physicians was professional liability insurance and the agreement specified they type and limits of the insurance. *Id.* at *1-2. The physicians brought suit when they discovered the insurance EmCare had purchased included hundreds of other medical groups, claiming this was a breach of the agreement. *Id*. at *2.

EmCare proffered as an expert witness an attorney who practiced in the area of insurance coverage and bad faith. *Id.* at *4. The magistrate excluded the expert report because it "clearly contained legal opinions." *Id.* at *6. The prohibited legal opinions contained in the expert's report included which insurance carrier was responsible, that the policy was governed by Texas law, and that the carrier had "responded properly." *Id.*

The opinions proffered by Mr. Menchel in this case are also prohibited legal conclusions, including FINRA's jurisdiction, the "intent" of the rule makers of FINRA Rule 12200, and legal interpretations of "Associated Person" and "control" under FINRA Rule 12200.  Report at p.2.  All of these opinions are prohibited conclusions of law and are not permitted by Rule 702.

> In the Eleventh Circuit . . . the judge is the only source of law.  It is the judge, not an expert, who 'decides the content of the law and instructs members of the jury on the applicability of the law to the facts of the case.'  An attorney may not testify regarding the meaning of a law or the legal implications of conduct.

*Brevard Emergency Servs*., 2006 WL at *6.

The interpretation of the FINRA rules is not a fact question, therefore, it is not appropriate matter for expert testimony.  *United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir.1987) (holding the "main inquiry" is whether the expert testimony will "appreciably help" the trier of fact). "Experts 'interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient....'" *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir.1999) (quoting *United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir.1988)).  Accordingly, testimony that involves legal conclusions is a prohibited matter for expert testimony. *Id*.

The FINRA Code of Arbitration Procedure serves as a contract between the parties and a sufficient written agreement to arbitrate. *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004)("Court must interpret the [FINRA Code as it would a contract . . ."); *Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 863-64 (2d Cir. 1994); *see AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986).  Recently, FINRA has said that its rules are more than contracts -- that they have the force of law.  Financial Industry Regulatory Authority, Regulation Notice 16-25, Forum Selection Provisions (2016), at 3

("FINRA's rules are approved by the Securities and Exchange Commission (SEC), binding on FINRA member firms and associated persons, and have the force of federal law").

Either way, whether the Rules are seen as contract or having the force of law, their interpretation is a question of law, not fact. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1284, 1290-91 (11th Cir.1998) (interpretation of forum selection clause is pure question of law). The plain language of Federal Rule of Evidence 702 and the cases above prohibits Mr. Menchel from offering expert testimony on the interpretation of the FINRA arbitration rules, which involve questions of law.

4.  *Conclusion*

Mr. Menchel's Report amounts to an impermissible effort "to plug holes in [Plaintiffs'] case, to speculate, and surmise." *In re Aluminum Phosphate Antitrust Litig.*, 843 F. Supp. 1497, 1506 (D.Kan. 1995). Mr. Menchel cannot give an opinion on an ultimate issue of law. In addition, Mr Menchel's background and experience does not qualify him to offer the opinions in the Report. His opinions lack any reasonable foundation, and they are not helpful to resolving any fact issues in this case, the only subject on which expert testimony may be offered..

Mr. Menchel should not be permitted to offer opinions relating to whether the Plaintiffs are "associated persons," or whether FINRA has jurisdiction over the Plaintiffs. For the reasons stated above, Defendants respectfully request the Court to enter an Order excluding Mr. Menchel's Report and testimony.

5.  *Certificate of Counsel*

The undersigned certifies that he contacted counsel for Plaintiffs before filing this motion in an effort to resolve the issues contained herein and the parties were not able to resolve any of the issues presented by this motion.

*Attorneys for Defendants:*

CARLSON & ASSOCIATES, P.A.


By: _____*s/ Curtis  Carlson*_____
    Curtis Carlson, FBN 236640
    Suntrust International Center
    Suite 1200
    One S.E. Third Avenue
    Miami, Florida 33131
    Telephone:  305.372.9700
    Facsimile:  305.372.8265
    Email: carlson@carlson-law.net

<u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on October 13, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record listed below, in the manner specified, either via transmitting of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Terry R. Weiss, Esq.
Greenberg Traurig LLP
3333 Piedmont Road NE
Suite 2500
Terminus 200
Atlanta, GA 30305
(678) 553-2603
weisstr@gtlaw.com

Mark Allan Salky, Esq.
Greenberg Traurig LLP
333 Avenue of the Americas
Suite 4400
Miami Florida  33131
(305) 579-0717
salkym@gtlaw.com

Mark G. Hanchet (Admitted Pro Hac Vice)
Jeremy Schildcrout (Admitted Pro Hac Vice)
Mayer Brown LLP
1675 Broadway

New York, NY 10019
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
Email: mhanchet@mayerbrown.com
Email: jschildcrout@mayerbrown.com

By: *s/ Curtis Carlson*