UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81088-CIV-MARRA/MATTHEWMAN

PICTET OVERSEAS INC., PHILIPPE
BERTHERAT, REMY ANTOINE BEST,
RENAUD FERNAND DE PLANTA,
JACQUES JOSEPH DE SAUSSURE,
BERTRAND FRANCOIS LAMBERT
DEMOLE, JEAN-FRANCOIS DEMOLE,
MARC PHILIPPE PICTET, and
NICOLAS LUCIEN PICTET,

    Plaintiffs,

v.

HELVETIA TRUST and AAA
GROUP INTERNATIONAL TRUST,

    Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MARC MENCHEL**

  Plaintiffs, Pictet Overseas Inc. ("Pictet Overseas"), Philippe Bertherat, Remy Antoine Best, Renaud Fernand De Planta, Jacques Joseph De Saussure, Bertrand Francois Lambert Demole, Jean-Francois Demole, Marc Philippe Pictet, and Nicolas Lucien Pictet (together with other individual plaintiffs, the "Individual Plaintiffs") (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendants' Motion to Exclude the Expert Testimony of Marc Menchel (ECF No. 161) (the "Motion").

1

**PRELIMINARY STATEMENT**

Defendants have moved to exclude the testimony of Plaintiffs' proposed FINRA expert, Marc Menchel, from the upcoming bench trial, arguing that the former General Counsel of FINRA is unqualified to opine on FINRA Rules, is unable to offer reliable testimony and improperly opines on issues of law.  Defendants' Motion should be denied.

This case turns on whether FINRA rules require Plaintiffs to arbitrate the statement of claim filed by Defendants before FINRA.  Defendants contend that under FINRA rules, even though they opened custodial accounts with a Swiss bank in Geneva, they were "customers" not of the Swiss bank, but of the Swiss bank's individual owners (the Individual Plaintiffs). Although neither the Swiss bank nor the Individual Plaintiffs are FINRA members, Defendants argue that the Individual Plaintiffs are nonetheless "associated persons" of Pictet Overseas, a FINRA member, according to FINRA rules.  As such, Defendants argue that the Individual Plaintiffs are subject to FINRA's arbitration requirement because they have an indirect ownership interest in Pictet Overseas, even though Pictet Overseas has nothing whatsoever to do with Defendants, Defendants' investments or the allegations in Defendants' purported FINRA action.  In light of Defendants' interpretative gymnastics, Mr. Menchel was asked to opine on the scope, purpose and industry application of FINRA rules as they relate to "associated persons."

Aside from having over thirty years of experience in the securities industry in senior executive, legal and compliance roles, Mr. Menchel served as General Counsel of FINRA for a decade.  In this role, Mr. Menchel's primary responsibilities included the promulgation and interpretation of FINRA rules.  Defendants nevertheless quarrel with Mr. Menchel's experience, calling it inapplicable because Mr. Menchel led FINRA's *regulatory* division, and not its *arbitration* division.  But the concept of "associated person" is not confined to arbitration.  It is a

2

*regulatory* concept that defines the scope of, and necessarily precedes, FINRA's arbitration requirement, its enforcement jurisdiction and the supervisory obligations of its members. Indeed, in his time with FINRA, Mr. Menchel was an authority on the interpretation of all FINRA rules (not only regulatory rules), and often fielded questions from the arbitration and enforcement divisions, including those dealing with "associated persons."  Clearly, Mr. Menchel is qualified under the Federal Rules of Evidence to testify on these issues.

And contrary to Defendants' suggestion, FINRA rules are not law and Mr. Menchel's opinions do not constitute legal conclusions.  Indeed, Judge Cohn, also of the Southern District of Florida, recently found that a similarly qualified FINRA expert's testimony regarding the interpretation of various FINRA rules was admissible under the Federal Rules of Evidence and would "doubtless assist" the factfinder.  *See Remington v. Newbridge Sec. Corp.*, No. 13-60384-CIV, 2014 WL 505153 (S.D. Fla. Feb. 7, 2014).

Finally, even if Mr. Menchel's qualifications and the propriety of his testimony were not beyond question, the Court's *Daubert*-inspired gatekeeping function is not implicated because there is no jury in this case.  While Plaintiffs have no doubt that the Court will find Mr. Menchel qualified, credible and helpful, the Court is more than capable of assigning appropriate weight to Mr. Menchel's testimony.

**ARGUMENT**

I.      **MARC MENCHEL'S TESTIMONY SATISFIES *DAUBERT*.**

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589, (1993) ("*Daubert*") and its progeny, a district court ruling on the admissibility of expert testimony considers whether "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable ...; and (3) the testimony assists the trier of fact, through the

3

application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink v. Chemnova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

Where a party seeks to exclude expert testimony for insufficient qualifications, such attacks can and should be dealt with during cross-examination, not at the threshold determination of admissibility. *Martinez v. Altec Indus. Inc.*, 2005 WL 1862677 (M.D. Fla. Aug. 3, 2005).

### A.      Marc Menchel is Qualified to Testify.

Defendants argue Mr. Menchel is unqualified.  (Motion at 7-8).  Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).  "Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (internal quotation omitted). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Id.*; *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) (same).

Defendants take specific issue with the fact that, during his time at FINRA, Mr. Menchel purportedly did not promulgate FINRA *arbitration* rules, but instead only promulgated FINRA *regulatory* rules.  (Motion at 8-9).  Defendants contend that "[w]hile Mr. Menchel may be knowledgeable about FINRA's rules dealing with Regulation, he has listed no experience with the FINRA Dispute Resolution rules, specifically the 12000 Series of rules, which is known as the FINRA Code of Arbitration Procedure for Customer Disputes." *Id.* at 7.

But the distinction that Defendants make between the FINRA rules governing regulation and the FINRA rules governing arbitration is non-existent.  The term "associated person"—the

4

term Mr. Menchel proposes to explain in his proffered testimony—is common to FINRA regulation, arbitration and enforcement rules alike. *See, e.g.*, FINRA Rule 0140 ("The Rules shall apply to all members and persons associated with a member. Persons associated with a member shall have the same duties and obligations as a member under the Rules."); FINRA Rule 1000 Series (Member Application and Associated Person Registration); FINRA Rule 3000 Series (Supervision and Responsibilities Relating to Associated Persons); FINRA Rule 9110 ("The Rule 9000 Series is the Code of Procedure and includes proceedings for disciplining a member or person associated with a member…."); FINRA Rule 8310 ("After compliance with the Rule 9000 Series, FINRA may impose one or more of the following sanctions on a member or person associated with a member…."). As the General Counsel of FINRA's regulatory division, Mr. Menchel was a recognized authority on the interpretation of FINRA rules, including those involving the "associated person" concept. *See* Menchel Report, Exhibit A (*Curriculum Vitae*), ECF No. 163-1 at 10.[1] Mr. Menchel often fielded questions from FINRA's arbitration and enforcement branches regarding complicated interpretive issues. *Id*.

Defendants' attempt to limit Mr. Menchel's expertise to FINRA's "regulatory rules" fails as a matter of fact. It is also inconsistent with the Federal Rule 702, which requires only that an expert be "minimally qualified." *See Clena Investments*, 280 F.R.D. at 661. After ten years serving as FINRA's General Counsel and over thirty years in counsel, compliance and senior management positions in the securities industry, Mr. Menchel is no doubt "minimally qualified"

---

[1] Mr. Menchel's *curriculum vitae* states that "the Regulatory Group is charged with determining FINRA regulatory policy **both in conjunction with and independently from the operating divisions of FINRA**, preparing, filing and shepherding all rule filings with the SEC, issuing Regulatory Notices, **interpretive guidance**, and other publications dealing with FINRA policy, providing a liaison function to all standing committees of FINRA, and **providing counsel and policy guidance to all operating departments of FINRA and senior management**." (emphasis added).

to opine on the scope the FINRA term "associated person."  Defendants are free to test the depth of Mr. Menchel's expertise on cross-examination.

### B.      Marc Menchel's Conclusions are Sufficiently Reliable.

Defendants next contend that Mr. Menchel's expert testimony is not sufficiently reliable, again arguing that Mr. Menchel's experience came in the wrong division of FINRA.  (Motion at 8  ("[Mr. Menchel] has failed to even attempt to explain how or why his experience at FINRA, which was entirely in the area of Regulation, can provide the basis for his proffered opinions on rules involving arbitration, which are in an entirely separate area of FINRA."))

As noted, Mr. Menchel is uniquely qualified to opine on the contours of the FINRA "associated person" concept because he was an authority on FINRA rule interpretation as the General Counsel of FINRA.  "Associated person"—the precise topic of Mr. Menchel's proposed testimony—is a fundamental concept that defines the scope of FINRA's jurisdiction in the regulatory, enforcement and arbitration contexts, with which Mr. Menchel has ample experience.  In suggesting that Mr. Menchel needs some sort of "specialized" experience in arbitration, Defendants mischaracterize the legal standard for determining whether a proposed expert is sufficiently reliable.  (*See* Motion at 8-9).  Indeed, "the Eleventh Circuit and other courts of appeal have held that a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Johnson v. Carnival Corp.*, 2007 WL 9624458 (S.D. Fla. Dec. 19, 2007) (collecting cases); *see also Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) ("An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand.").  Mr. Menchel does not need to have specialized experience with the particular FINRA arbitration rule in question for his testimony to be considered reliable.  His broad FINRA expertise renders him fit to testify reliably.

6

A recent case from this district, *Remington v. Newbridge Sec. Corp.*, No. 13-60384-CIV, 2014 WL 505153 (S.D. Fla. Feb. 7, 2014), is directly on point.  There, the plaintiffs were customers of a securities broker-dealer who brought suit against the broker-dealer, alleging that it had charged plaintiffs excessive fees.  Plaintiffs engaged an expert, a former FINRA attorney who had over thirty years of experience in the securities industry, to testify as to the interpretation of relevant FINRA rules.  The defendants moved to exclude the expert, arguing that he "possessed[] no 'relevant' experience because he has not specifically prosecuted FINRA enforcement actions premised upon excessive handling fees." *Id*. at *4.  Judge Cohn rejected this argument, holding

> The Court does not view Carasick's lack of involvement with handling-fee cases as impacting the sufficiency of his expertise. An expert may testify regarding narrow sub-topics within his broader expertise-notwithstanding a lack of specific experience with the narrower area-as long as his testimony would still assist a trier of fact.

*Id*.  The Court also observed that "the realm of securities regulation is arcane and inaccessible even to many legal professionals not versed in the subject. Carasick's proposed testimony would doubtless assist the jury in understanding the concepts and issues of this case." *Id*. at *3; *accord Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001) (expert's broad expertise in economics sufficient for damages expert, despite lack of experience in real estate development).  Like the FINRA expert in *Remington*, Mr. Menchel is more than qualified to testify reliably and helpfully here.

      **C.**    **Marc Menchel's Testimony will Assist the Court.**

Finally, Defendants argue that Mr. Menchel offers "inadmissible legal opinions that are not helpful to the Court."  (Motion at 10.)  But Defendants are mistaken when they refer to FINRA rules as "law" and the interpretation of FINRA rules as "legal conclusions." *Id.* at 10-11 ("Mr. Menchel intends to offer opinions solely on the law, specifically on how to interpret the

7

FINRA Code of Arbitration."). Indeed, Judge Cohn considered and rejected this precise argument in *Remington*:

> Newbridge also takes the position that Carasick's interpretation of Conduct Rule 2430 is inadmissible because it is a legal conclusion. An expert witness may not offer legal conclusions; only the Court may instruct the jury as to the state of the law. Newbridge argues that Carasick's testimony regarding FINRA's rules is akin to an expert witness impermissibly testifying to a broker-dealer's legal duties. FINRA's rules, however, are not law, but rather the rules of a private organization, thus an expert's interpretation of the rules does not encroach upon the Court's domain. The Court accordingly finds that Carasick's proposed testimony on FINRA's rules does not constitute an inadmissible legal conclusion.

2014 WL 505153, *5 (internal citations omitted). Just like in *Remington*, Mr. Menchel's opinions here do not constitute improper legal conclusion, nor do they usurp the Court's role as the sole source of law.

## II. DEFENDANTS' *DAUBERT* MOTION IS MISPLACED IN THIS BENCH TRIAL.

Finally, even if this were a close call—and it is not—the Court should permit Mr. Menchel to testify. The governing standard "requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony *does not reach the jury*." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir.2010) (emphasis added). There is no jury in this case to be insulated from unduly influential expert testimony.

Eleventh Circuit law is clear that *Daubert*'s "gatekeeping" purpose does not apply in bench trials in the same way as it does in jury trials. *See Lary v. Boston Sci. Corp.*, 2014 WL 7152769, *13 (S.D. Fla. Dec. 15, 2014) ("However, because this is a non-jury trial, the gatekeeping purpose of *Daubert* is not implicated."), *aff'd* 633 Fed. App'x 781 (11th Cir. 2016); *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) ("traditional barriers to opinion testimony…are even more relaxed in a bench trial situation, where the judge is serving as a factfinder and we are not concerned about dumping a barrage of questionable scientific evidence

on a jury"); *Bristol-Myers Squibb Co. v. Andrx Pharms., Inc.*, 343 F. Supp. 2d 1124, 1131 (S.D. Fla. 2004) ("The Court agrees that the question of reliability and relevance in this case is merely one of degree . . . . This is especially true since this is a bench trial, where the Court must evaluate the evidence regardless of whether it ultimately decides to exclude it . . . Thus, some courts have held that, in cases where the judge is the factfinder, the criteria for finding evidence admissible can be applied less strictly.") (citations omitted).

Defendants do not offer *a single case* in their Motion in which an expert was excluded in a bench trial. Here, the Court is more than capable of considering and assigning appropriate weight to Mr. Menchel's testimony. There is no danger of improper influence.

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that Defendants' Motion to Exclude Expert Testimony of Marc Menchel (ECF No. 161) be denied.

Dated: November 18, 2016     Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:  /s/ *Mark A. Salky*
MARK A. SALKY
Florida Bar No. 58221
Email: salkym@gtlaw.com
IAN M. ROSS
Florida Bar No. 91214
Email: rossi@gtlaw.com

**GREENBERG TRAURIG, LLP**
Terry R. Weiss
Florida Bar No. 57906
Email: weisstr@gtlaw.com
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212

**GREENBERG TRAURIG, P.A.**
Jennifer L. Tomsen
Florida Bar No. 630871
Email: tomsenj@gtlaw.com
1000 Louisiana Street Suite 1700
Houston, TX 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**MAYER BROWN LLP**
Mark G. Hanchet (Admitted Pro Hac Vice)
Robert W. Hamburg (Admitted Pro Hac Vice)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
Email: mhanchet@mayerbrown.com
Email: rhamburg@mayerbrown.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on the parties listed in the service list below, either via transmission of Notices of Electronic Filing generated by CM/ECF or via overnight mail for those parties who are not authorized to receive electronically Notices of Electronic Filing:

By: __/s/ *Mark A. Salky*_____
Mark A. Salky

## SERVICE LIST

Curtis David Carlson, Esq.
**CARLSON & LEWITTES PA**
One Southeast Third Avenue
Suite 1200
Miami, FL 33131
Tel: (305) 372-9700
Fax: (305) 372-8265
Email: carlson@carlson-law.net

*Counsel for Defendants*